No. 45,676

CITY OF WICHITA, *Appellee*, v. RICHARD C. WHITE, *Appellant*.

(469 P. 2d 287)

Opinion filed May 9, 1970.

*S. A. Issinghoff*, of Wichita, argued the cause and was on the brief for the appellant.

*Arthur G. Johnson*, of Wichita, argued the cause, and *John Dekker*, also of Wichita, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: The constitutionality of an ordinance requiring the operator of a motorcycle or one riding as a passenger to wear a crash helmet is the subject of this appeal. The trial court upheld the conviction of the defendant on stipulated facts that the defendant did, on May 1, 1968, and on May 14, 1968, operate a motorcycle without headgear as required by the ordinance.

The ordinance provides:

"No person shall operate or ride as a passenger on a motorcycle or motor driven cycle unless he is wearing a crash helmet or other adequate protective headgear of a type authorized and approved by the State Highway Commission of the State of Kansas. . . ."

The ordinance became effective on July 14, 1967, and was enacted just after July 1, 1967, the effective date of a state statute (K. S. A. 1967 Supp. [now 1969 Supp.] 8-574b) worded in almost identical language to the ordinance.

The enactment of the ordinance in question was in keeping with the rule set forth in *City of Kansas City v. Tipton*, 193 Kan. 651, 396 P. 2d 350.

We shall treat the question here presented as one dealing with the state legislative enactment.

In reviewing questions of constitutionality courts are not to be concerned with the wisdom, expediency, necessity or desirability of a legislative enactment. The legislative history of these laws, in this state and others, demonstrates that they have dedicated proponents and equally dedicated opponents. The question before us is not what the legislature should do but what the legislature can do.

In *Berman v. Parker*, 348 U. S. 26, 99 L. Ed. 27, 75 S. Ct. 98 (1954), the United States Supreme Court said:

". . . Subject to specific constitutional limitations, when the legislature has spoken, the public interest has been declared in terms well-nigh conclusive. In such cases the legislature, not the judiciary, is the main guardian of the public needs to be served by social legislation, . . ." (p. 32.)

In reviewing statutes such as these, the court begins with the proposition that all presumptions are in favor of their validity. (*State, ex rel., v. Fairmont Foods Co.*, 196 Kan. 73, 77, 410 P. 2d 308; and *Tilley v. Keller Truck & Implement Corp.*, 200 Kan. 641, 438 P. 2d 128.) The court does not sit in judgment on the merits of such legislation. If the statute here challenged does not contravene significant constitutional or inherent rights of individuals, if the classification on which it is based is reasonable, if it is within the scope of the police powers of the state, if it is appropriately related to a proper purpose of such police power, the statute is not to be invalidated by the judicial arm of government.

It appears from the appellant's brief that two basic challenges are made to the validity of the statute: (1) That it protects the motorcycle driver or rider only against himself and is therefore beyond the scope of the police powers of the state; and (2) that it transgresses constitutional or inherent rights of the appellant without corresponding benefit accruing to the general welfare of the public. Both contentions rest upon the appellant's interpretation of the statute that it does no more than protect the cycle drivers and riders from the consequences of their own actions.

Can it be said that the statute in no way concerns or benefits other persons, particularly other users of the public highways?

Both the ordinance and the statute require protective headgear for motorcyclists. The very term "protective headgear" implies protection of the head of the wearer. It must be conceded the statute

is intended primarily to diminish the severity of the accident upon the victim himself, but can it be said that such safety requirement does not affect or concern at all other users of the public highway?

It is an elementary rule of law that the right to operate a motor vehicle upon a public street or highway is not a natural or unrestrained right, but a privilege which is subject to reasonable regulation under the police power of the state in the interest of the public safety and welfare. (*Lee v. State*, 187 Kan. 566, 358 P. 2d 765.)

Statistics for the past few years indicate dramatically that there has been a tremendous increase in the number of motorcycles operated by American motorists. An analysis of the vehicle registration figures establishes that motorcycle registrations have increased 210 percent from 1961 to July, 1967, compared to an increase of only 26 percent for all motor vehicles during that time. (*Motorcycle Facts*, National Safety Council Statistics Division, July, 1967.)

While motorcycles equal only 2 percent of the registered motor vehicles in the United States, motorcycle accidents account for 3½ percent of all motor vehicle fatalities. (*Motorcycle Facts*, supra.) On a vehicle-mile basis, a person's chances of being killed while riding a motorcycle are twenty times greater than those of a person riding in another type vehicle. (Dark, *Your Youngster and the Motorcycle*, Today's Health, May, 1967, p. 21.)

In 1965 the number of persons killed per 100,000 registered motorcycles was two and one-half times that of the corresponding rate for all other motor vehicles. (The Insurance Advocate, August 12, 1967.)

Statistics relating to injuries per accident, comparing motorcycles to all vehicles, are equally grim. As a national average only 9 percent of motor vehicle accidents result in personal injury or death, the balance involving only property damage, while studies show that between 80 and 90 percent of all motorcycle accidents cause death or personal injury to the cyclist. (*Motorcycle Facts*, supra.)

The fact that motorcycle accidents produce a greater number of injuries than do other vehicle accidents is even more striking when one considers that other vehicles have generally greater passenger capacities and thus expose potentially more passengers to possible injury per accident than do motorcycles. (See, 9 For the Defense No. 1, January, 1968.)

The foregoing statistics emphasize that our public highways are not deserted these days, so it is apparent the legislature was not concerned with a solitary cyclist on a deserted country road losing control of his cycle. If the loss of cyclist control were to occur on a well traveled highway, anything that might cause the driver to lose control may well tragically affect another driver. If the loss of cyclist control occurs on a crowded freeway, with its fast moving traffic, the veering of a cyclist from his path of traffic may pile up a half dozen vehicles. The question that arises is whether the presence of a protective helmet would, in some cases and under some circumstances, make less likely the diverting of attention or loss of control of the cycle by its driver. It cannot be disputed that the driver of a motorcycle is somewhat more exposed to flying objects than someone operating an enclosed vehicle.

It does not tax the intellect to comprehend that loose stones and pebbles on the highway kicked up by the wheels of passing vehicles traveling at high speeds, or fallen objects such as windblown tree branches, against which the operator of a closed vehicle has some protection, could so affect the operator of a motorcycle as to cause him momentarily to lose control and thus become a menace to other users of the highway. (*State v. Lombardi*, __ R. I. __, 241 A. 2d 625 [1968].) Cyclists hit with hard-shelled flying beetles, bees or birds could possibly lose control of their cycles, causing damage and injuries to others. (*People v. Bielmeyer*, 54 Misc. 2d 466, 282 N. Y. S. 2d 797.)

A motorcycle is a comparatively light machine which is delicately balanced and operated. There are special conditions, situations or occurrences which could cause a driver to be propelled off the road or into the opposite lane causing damage to other vehicles or property or injuries to passengers or pedestrians.

Far more than with an automobile or a truck the very nature of a motorcycle requires that a rider be able to control his vehicle at every second. The successful and enjoyable operation of a motorcycle can only be had when there is a true "man-machine team." The "two" are more truly "one" than with any other means of conveyance. This fact no doubt adds to the enjoyment, excitement and popularity of motorcycling. However, it also means the rider must always wear the recommended clothing and equipment for his protection, as well as for the protection of others. This the state has

recognized and has a right to insist upon. (*People v. Bielmeyer*, supra.)

The Michigan Court of Appeals in *Motorcycle Assn. v. State Police*, 11 Mich. App. 351, 158 N. W. 2d 72, has termed the argument justifying the helmet law because it protects against flying objects a "strained effort to justify what is admittedly wholesome legislation" adding the suggestion that "If the purpose truly were to deflect flying objects, rather than to reduce cranial injuries, a windshield requirement imposed on the manufacturer would bear a reasonable relationship to the objective." (pp. 356, 357.)

Even so, choosing between available alternatives in promoting highway safety is for the legislature, not for the courts. If requiring helmets is a protection against motorcycle drivers being hit and distracted by flying objects, such requirements need not be the only, or even the best way to accomplish the purpose of preventing such distraction to make it a proper exercise of the police power of the state.

Over and above the interest the state has in protecting other users of the highways from the dangers of involvement in an accident is the fact that other users of the highway have an interest in the seriousness of the consequences of accidents as well as in the frequency of mishaps. Promoting highway safety is not to be limited to the prevention of accidents alone. It can include efforts to reduce the serious consequences of such accidents. There is a great difference between a mashed fender and an accident causing permanent injuries or death—a difference to the victim, to other drivers involved in the accident, and to the community.

It is readily apparent that other motorists are affected by the consequences of an accident, and that is the test. Therefore, the police power of the state may be exercised to minimize the consequences of collisions and accidents as well as to decrease the number of collisions and accidents.

We conclude the requirement of protective headgear for the exposed operator of a motorcycle bears a real and substantial relationship to public safety generally on our public highways and streets.

Forty-one states now have helmet laws. (American Association of Administrators, Vol. 35, No. 3, p. 8, *Motor Vehicle Law Review*.) The vast majority of the states in which the constitutionality of the helmet law has been challenged have upheld it. A vigorous opinion to the contrary is *Motorcycle Assn. v. State Police*, supra.

The helmet law has been upheld as reasonable by the ruling courts in Louisiana, Massachusetts, North Carolina, North Dakota, Oregon, Rhode Island, Texas, Washington and Wisconsin. (*Everhardt v. City of New Orleans,* 253 La. 285, 217 So. 2d 400; *Commonwealth v. Howie,* 354 Mass. 769, 238 N. E. 2d 373, cert. denied 393 U. S. 999, 21 L. Ed. 2d 464, 89 S. Ct. 485; *State v. Anderson,* 275 N. C. 168, 166 S. E. 2d 49; *State v. Odegaard,* 165 N. W. 2d 677 [N. D. 1969]; *State v. Fetterly,* __ Or. __, 456 P. 2d 996 [1969]; *STATE v. Lombardi,* supra; *Ex Parte Smith,* 441 S. W. 2d 544 [Tex. Crim 1969]; *State v. Laitinen,* __ Wash. __, 459 P. 2d 789 [1969]; *Bisenius v. Karns,* 42 Wis. 2d 42, 165 N. W. 2d 377 [dismissed on appeal by U. S. Supreme Court for want of a substantial federal question in 395 U.S. 709, 23 L. Ed. 2d 655, 89 S. Ct. 2033; *Contra, People v. Fries,* 42 Ill. 2d 446, 250 N. E. 2d 149.)

It must be recognized there is a balancing test which occurs between the individual rights infringed and the benefits to the public welfare. In *Bisenius v. Karns,* supra, the court remarked that the right to be left alone does not include the right to do "one's thing" on an expressway. The court said:

". . . There is no place where any such right to be let alone would be less assertible than on a modern highway with cars, trucks, busses and cycles whizzing by at sixty or seventy miles an hour. When one ventures onto such a highway, he must be expected and required to conform to public safety regulations and controls, including some that would neither have been necessary nor reasonable in the era of horse-drawn vehicles." (p. 55.)

While it must be recognized that the chances of causing injury to others by failure to wear protective headgear are not as great as those resulting from most conduct which is the subject of motor vehicle regulations, the danger does exist and is a real one. The right to operate a motorcycle without protective headgear does not, in the scheme of things, loom very large when compared with the right of others to the protection from danger on our public streets and highways. We conclude the legislature in passing the questioned statute (and the ordinance adopted by the city of Wichita consistent therewith) has created no constitutional imbalance between the personal liberty of the individual and the interest of the state.

Once the court finds that a statute is within the area of the proper exercise of state police power, it is for the legislature to determine what regulations, restraints or prohibitions are reasonably required to protect the public safety, and only the abrogation of a

basic and substantial liberty would justify judicial intervention to set aside the legislative enactment. The concept of public safety is an evolutionary, not a fixed or static proposition. The range of permissible public action in the area of highway transportation has been enlarged, not by the courts, but by the changes that have come in the field of private and public transportation. (*Bisenius v. Karns*, supra.)

The reasoning in the foregoing opinion is substantially that set forth in *Bisenius v. Karns*, supra, which we consider persuasive.

It lies within the power of the legislature to adopt reasonable measures for the promotion of safety upon public highways in the interest of motorcyclists and others who may use them. Here the act of the legislature and the ordinance in question, which was adopted pursuant thereto, bears a real and substantial relation to the public health and general welfare and is thus a valid exercise of the police power. The legislation is reasonable, it applies to all equally, and is directly related to highway safety. (*Commonwealth v. Howie*, supra.)

The judgment of the lower court is affirmed.

FONTRON, J., dissents.