(Nos. 62719, 62799, 63075, 63224 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS *et al.*, Appellants, v. ELIZABETH J. KOHRIG *et al.*, Appellees.

*Opinion filed October 1, 1986.*

CLARK, C.J., and SIMON, J., took no part.

Neil F. Hartigan, Attorney General, of Springfield, and Robert W. Matoush, State's Attorney, of Salem (Philip W. Tone, Jerold S. Solovy, Glenn K. Seidenfeld, Barry Levenstam and Kristen E. Lehker, Special Assistant Attorneys General, of Jenner & Block, of Chicago, of counsel), for the People.

R. Edward Veltman, Jr., and John A. Guzzardo, of Centralia, for appellee Elizabeth J. Kohrig.

Robert L. Stern and Stephen M. Shapiro, of Mayer, Brown & Platt, of Chicago, for *amici curiae* The Illinois Association of Chiefs of Police *et al.*

William J. Harte, Ltd., of Chicago (William J. Harte, of counsel), for *amicus curiae* State Representative John Cullerton.

Neil F. Hartigan, Attorney General, of Springfield, and Richard A. Runde, State's Attorney, of Effingham (Philip W. Tone, Jerold S. Solovy, Glenn K. Seidenfeld, Barry Levenstam and Kristen E. Lehker, Special Assistant Attorneys General, of Jenner & Block, of Chicago, of counsel), for the People.

No appearance for appellee.

Robert L. Stern and Stephen M. Shapiro, of Mayer, Brown & Platt, of Chicago, for *amici curiae* The Illinois Association of Chiefs of Police *et al.*

William J. Harte, Ltd., of Chicago (William J. Harte, of counsel), for *amicus curiae* State Representative John Cullerton.

Neil F. Hartigan, Attorney General, of Springfield (Philip W. Tone, Jerold S. Solovy, Glenn K. Seidenfeld, Barry Levenstam and Kristen E. Lehker, Special Assistant Attorneys General, of Jenner & Block, of Chicago, of counsel), for the People.

James J. Hagle, of Zimmerly, Gadau, Selin & Otto, of Champaign, for appellee Regina L. Greene.

Robert L. Stern and Stephen M. Shapiro, of Mayer, Brown & Platt, of Chicago, for *amici curiae* The Illinois Association of Chiefs of Police *et al.*

William J. Harte, Ltd., of Chicago (William J. Harte, of counsel), for *amicus curiae* State Representative John

Cullerton.

Neil F. Hartigan, Attorney General, of Springfield (Philip W. Tone, Jerold S. Solovy, Glenn K. Seidenfeld, Barry Levenstam and Kristen E. Lehker, Special Assistant Attorneys General, of Jenner & Block, of Chicago, of counsel), for the People.

No appearance for appellee.

Robert L. Stern and Stephen M. Shapiro, of Mayer, Brown & Platt, of Chicago, for *amici curiae* The Illinois Association of Chiefs of Police *et al.*

William J. Harte, Ltd., of Chicago (William J. Harte, of counsel), for *amicus curiae* State Representative John Cullerton.

PER CURIAM: The defendants in these four consolidated cases were issued traffic citations for failure to wear seat safety belts while operating their motor vehicles on a street or highway in violation of section 12—603.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 12—603.1 (hereinafter the section)). In each case, the trial court concluded that the section was unconstitutional and dismissed the charge. The State appealed each case directly to this court pursuant to our Rule 302(a) (94 Ill. 2d R. 302(a)), and the cases were consolidated for purposes of appeal. Only two of the four defendants—Elizabeth J. Kohrig and Regina L. Greene—have filed briefs in this court; however, various parties have been permitted to file briefs as *amicus curiae.*

At issue is whether the section, which requires drivers of motor vehicles and their front-seat passengers to wear safety belts when driving on a public highway or

street, violates the due process guarantees of the State and Federal constitutions. Ill. Const. 1970, art. I, sec. 2; U.S. Const., amend. XIV, sec. 1.

The section, which became effective on July 1, 1985, provides in part:

> "(a) Each driver and front seat passenger of a motor vehicle operated on a street or highway in this State shall wear a properly adjusted and fastened seat safety belt; except that, a child less than 6 years of age shall be protected as required pursuant to the Child Passenger Protection Act. Each driver of a motor vehicle transporting a child 6 years of age or more, but less than 16 years of age, in the front seat of the motor vehicle shall secure the child in a properly adjusted and fastened seat safety belt." (Ill. Rev. Stat. 1985, ch. 95½, par. 12—603.1(a).)

The statute also provides that certain persons are exempt from complying with the seat-belt-use requirement, including persons with a written medical waiver from a physician or government agency; those persons frequently stopping and leaving the vehicle or delivering property from the vehicle if its speed between stops does not exceed 15 miles per hour; and drivers operating a vehicle in reverse. (Ill. Rev. Stat. 1985, ch. 95½, pars. 12—603.1(b)(1), (b)(4).) Certain vehicles also are exempt from the statute's requirements, including motorcycles, motorized pedalcycles, and vehicles manufactured prior to 1965. (Ill. Rev. Stat. 1985, ch. 95½, pars. 12—603.1(b)(5), (b)(9).) Violators of the section are guilty of a "petty offense and subject to a fine not to exceed $25." Ill. Rev. Stat. 1985, ch. 95½, par. 12—603.1(d).

At the outset we note that, in reviewing the constitutionality of Illinois' mandatory-seat-belt law, this court does not join in the debate over whether the law is desirable or necessary. Our nation was founded in large part on the democratic principle that the powers of government are to be exercised by the people through their

elected representatives in the legislature, subject only to certain constitutional limitations. Although this court has never hesitated to invalidate laws that it believes to be unconstitutional, we emphasize that our role is a limited one. The issue here is "not what the legislature should do but what the legislature can do." *City of Wichita v. White* (1970), 205 Kan. 408, 409, 469 P.2d 287, 288.

Defendant Greene contends that the section violates her fundamental right to privacy protected by the due process clause of the fourteenth amendment. (U.S. Const., amend. XIV, sec. 2.) Additionally, both defendants argue that the section is beyond the police powers of the legislature and thus violates the due process clauses of the State and Federal constitutions. We first turn to the issue of whether the section violates defendants' fundamental right to privacy protected by the fourteenth amendment.

Regulations that limit a person's constitutional right to privacy may be justified only by a " 'compelling state interest,' " and the legislation "must be narrowly drawn to express only the legitimate state interests at stake." (*Roe v. Wade* (1973), 410 U.S. 113, 155, 35 L. Ed. 2d 147, 178, 93 S. Ct. 705, 728. See also *Carey v. Population Services International* (1977), 431 U.S. 678, 686, 52 L. Ed. 2d 675, 685, 97 S. Ct. 2010, 2016.) However, " 'only personal rights that can be deemed "fundamental" or "implicit in the concept of ordered liberty" [citation]' " (*Paris Adult Theatre I v. Slaton* (1973), 413 U.S. 49, 65, 37 L. Ed. 2d 446, 462, 93 S. Ct. 2628, 2639, quoting *Roe v. Wade* (1973), 410 U.S. 113, 152, 35 L. Ed. 2d 147, 176, 93 S. Ct. 705, 726), or those liberties " 'deeply rooted in this Nation's history and tradition' " (*Bowers v. Hardwick* (1986), 478 U.S. \_\_\_, \_\_\_, 92 L. Ed. 2d 140, 146, 106 S. Ct. 2841, 2844; see also *Moore v. City of East Cleveland* (1977), 431 U.S. 494, 503, 52 L. Ed. 2d 531, 540, 97 S. Ct. 1932, 1938) are included in the right of privacy guar-

anteed by the due process clause of the fourteenth amendment. The Supreme Court has selected only a few rights for such an esteemed status: the "privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing." *Paris Adult Theatre I v. Slaton* (1973), 413 U.S. 49, 65, 37 L. Ed. 2d 446, 462, 93 S. Ct. 2628, 2639. See *Bowers v. Hardwick* (1986), 478 U.S. ___, ___, 92 L. Ed. 2d 140, 148, 106 S. Ct. 2841, 2846; *Paul v. Davis* (1976), 424 U.S. 693, 712-13, 47 L. Ed. 2d 405, 420-21, 96 S. Ct. 1155, 1166.

Moreover, recognizing that a court is "most vulnerable and comes nearest to illegitimacy when it deals with judge-made constitutional law having little or no cognizable roots in the language or design of the Constitution," the Supreme Court has emphasized that there should be "great resistance" to further expanding the substantive due process right of privacy. (*Bowers v. Hardwick* (1986), 478 U.S. ___, ___, 92 L. Ed. 2d 140, 148, 106 S. Ct. 2841, 2846.) Thus, attempts by litigants to expand the privacy right beyond matters relating to marriage, procreation, contraception, family relations, abortion, child rearing and education have largely been unsuccessful. See, *e.g., Bowers v. Hardwick* (1986), 478 U.S. ___, 92 L. Ed. 2d 140, 106 S. Ct. 2841 (right to privacy does not encompass right to engage in homosexual sodomy); *Kelley v. Johnson* (1977), 425 U.S. 231, 244, 47 L. Ed. 2d 708, 714, 96 S. Ct. 1440, 1444 (police officer does not have privacy right to choose hairstyle); *Paul v. Davis* (1976), 424 U.S. 693, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (no privacy protection of reputation); *Paris Adult Theatre I v. Slaton* (1973), 413 U.S. 49, 37 L. Ed. 2d 446, 93 S. Ct. 2628 (privacy right does not encompass right of adults to watch obscene movies in places of public accommodation).

In the present case it cannot be said that defendant

Greene's claimed right to decide whether or not to wear a safety belt on a public highway resembles those liberties identified by the Supreme Court as being included in the right of privacy protected by the fourteenth amendment. Although the section in question implicates a person's interest in "liberty" in the sense that it restricts his freedom of choice, the law here does not regulate those intimate decisions relating to marriage, procreation, child rearing, education or family that have heretofore been recognized as deserving of heightened constitutional protection. (See *Wells v. State* (1985), ___ A.D.2d ___, 495 N.Y.S.2d 591 (mandatory-seat-belt-use law does not violate right of privacy). *Cf. People v. Thomas* (1984), 159 Cal. App. 3d Supp. 18, 206 Cal. Rptr. 84 (statute requiring the securing of a child passenger in a seat-restraint system does not infringe on defendant's fundamental right of privacy); *State v. Fetterly* (1969), 254 Or. 47, 456 P.2d 996 (motorcycle helmet law does not violate defendant's right of privacy).) Nor do we think that the right to decide whether or not to wear a safety belt is "implicit in the concept of ordered liberty" such that "neither liberty nor justice would exist if [it] were sacrificed" (*Palko v. Connecticut* (1937), 302 U.S. 319, 325-26, 82 L. Ed. 288, 292, 58 S. Ct. 149, 152), or a liberty "deeply rooted in this Nation's history and tradition" (*Moore v. East Cleveland* (1977), 431 U.S. 494, 503, 52 L. Ed. 2d 531, 540, 97 S. Ct. 1932, 1938). The States historically have been given a wide latitude to regulate the use of motor vehicles (*Bibb v. Navajo Freight Lines, Inc.* (1959), 359 U.S. 520, 530, 3 L. Ed. 2d 1003, 1010, 79 S. Ct. 962, 968), and the individual driver's autonomy on the road has, out of necessity for the public safety and welfare, been significantly curtailed by State regulation. Like the court in *Bisenius v. Karns* (1969), 42 Wis. 2d 42, 165 N.W.2d 377, *appeal dismissed* (1969), 395 U.S. 709, 23 L. Ed. 2d 655, 89 S. Ct. 2033,

we reject any notion that the right of privacy includes the right to "do one's thing" on an expressway:

"There is no place where any such right to be let alone would be less assertable than on a modern highway with cars, trucks, busses and cycles whizzing by at ·sixty or seventy miles an hour. When one ventures onto such a highway, he must be expected and required to conform to public safety regulations and controls, including some that would neither have been necessary nor reasonable in the era of horse-drawn vehicles." (42 Wis. 2d 42, 55, 165 N.W.2d 377, 384.)

We are unwilling to graft onto the Constitution a right of privacy to decide whether or not to wear a safety belt where there is no textual basis or a clear historical precedent for such a right in the language of the Constitution or the opinions of the Supreme Court. To do so would be to place the court in a position of acting as a super-legislature, nullifying laws it does not like. That is not our proper role in a democratic society. Therefore, we hold that the section does not infringe upon defendant's fundamental right of privacy protected by the fourteenth amendment. Neither does it infringe upon any right to privacy arising under the Illinois Constitution (Ill. Const. 1970, art. I, sec. 6).

Defendants also argue that the section does not further the health, safety or welfare of the general public, asserting that the statute only protects the safety of the individual driver and passenger. They contend that since the section interferes with their right to decide whether or not to wear a safety belt, and has no corresponding public benefit, the statute exceeds the State's police power and violates the due process guarantees of the State and Federal constitutions.

It is well established that the legislatures, not the courts, have the primary role in our democratic society in deciding what the interests of the public require and

in selecting the measures necessary to secure those interests. (*City of Carbondale v. Brewster* (1979), 78 Ill. 2d 111, 115; *Memorial Gardens Association, Inc. v. Smith* (1959), 16 Ill. 2d 116, 127.) Recognizing the legislature's broad power to provide for the public health, welfare and safety, the courts are hesitant to second-guess a legislative determination that a law is desirable or necessary. Only when the statute in question affects a fundamental constitutional right will the courts subject the legislation to strict or exacting scrutiny. In such cases, the State must have a "compelling" purpose for the law and show that its goals cannot be accomplished by less restrictive means. (*Carey v. Population Services International* (1977), 431 U.S. 678, 686, 52 L. Ed. 2d 675, 685, 97 S. Ct. 2010, 2016.) Few rights, however, have been identified as "fundamental," since only those rights "that lie at the heart of the relationship between the individual and a republican form of nationally integrated government" are deemed deserving of heightened judicial scrutiny. (*People ex rel. Tucker v. Kotsos* (1977), 68 Ill. 2d 88, 97.) Thus, in most cases involving substantive due process challenges to statutes, the courts give substantial deference to the legislative enactments.

In the present case we already have determined that the section here involved does not infringe upon the defendants' right of privacy protected by the fourteenth amendment, and defendants do not argue that the statute implicates any other fundamental constitutional right or liberty. As such, the State need not show a "compelling interest" for the law. It is sufficient that there is a rational basis for the statute. That is, the law will be upheld if it bears a rational relation to a legitimate legislative purpose and is neither arbitrary nor discriminatory. (*Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 487-88, 99 L. Ed. 563, 572, 75 S. Ct. 461, 464; *Harris v. Manor Healthcare Corp.* (1986), 111 Ill.

2d 350, 368; *Hayen v. County of Ogle* (1984), 101 Ill. 2d 413, 419; *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 453.) Under the rational-basis test, a statute is presumed to be valid, and the party challenging the statute has the burden of proving that the statute is irrational. (*Hayen v. County of Ogle* (1984), 101 Ill. 2d 413, 419; *Pozner v. Mauck* (1978), 73 Ill. 2d 250, 255.) As long as there is a conceivable basis for finding a rational relationship, the law will be upheld. *McGowan v. Maryland* (1961), 366 U.S. 420, 426, 6 L. Ed. 2d 393, 399, 81 S. Ct. 1101, 1105; *Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 368.

In challenging the section as exceeding the scope of the State's police power, the defendants principally rely on the case of *People v. Fries* (1969), 42 Ill. 2d 446. In *Fries* the court held that a statute requiring the operator or passenger of a motorcycle to wear protective headgear was unconstitutional. The court reasoned that the purpose of the headgear requirement was to "safeguard the person wearing it" and was unrelated to the safety of the public at large. (42 Ill. 2d 446, 450.) It concluded that the statute constituted a "regulation of what is essentially a matter of personal safety" and exceeded the scope of the State's police power. (42 Ill. 2d 446, 450.) Here, too, defendants argue that the decision of whether or not to wear a safety belt is "essentially a matter of personal safety" and that any regulation restricting the individual's right to make such a decision exceeds the State's police power.

The State, on the other hand, maintains that *Fries* was wrongly decided, and it urges us to overrule that decision. It correctly notes that at present *Fries* stands alone in holding that a motorcycle helmet law is unconstitutional. The overwhelming weight of authority is that motorcycle-helmet laws are a valid exercise of the State's police power. (See *Kingery v. Chapple* (Alaska

1972), 504 P.2d 831; *State v. Beeman* (1975), 25 Ariz. App. 83, 541 P.2d 409; *Penney v. City of North Little Rock* (1970), 248 Ark. 1158, 455 S.W.2d 132; *Love v. Bell* (1970), 171 Colo. 27, 465 P.2d 118; *State v. Brady* (Del. Super. 1972), 290 A.2d 322; *Hamm v. State* (Fla. 1980), 387 So. 2d 946; *State v. Cotton* (1973), 55 Hawaii 138, 516 P.2d 709; *State v. Albertson* (1970), 93 Idaho 640, 470 P.2d 300; *City of Wichita v. White* (1970), 205 Kan. 408, 469 P.2d 287; *Everhardt v. City of New Orleans* (1968), 253 La. 285, 217 So. 2d 400, *appeal dismissed and cert. denied* (1969), 395 U.S. 212, 23 L. Ed. 2d 214, 89 S. Ct. 1775; *State v. Quinnam* (Me. 1977), 367 A.2d 1032; *Simon v. Sargent* (D. Mass. 1972), 346 F. Supp. 277, *aff'd* (1972), 409 U.S. 1020, 34 L. Ed. 2d 312, 93 S. Ct. 463; *Commonwealth v. Howie* (1968), 354 Mass. 769, 238 N.E.2d 373, *cert. denied* (1968), 393 U.S. 999, 21 L. Ed. 2d 464, 89 S. Ct. 485; *City of Adrian v. Poucher* (1976), 398 Mich. 316, 247 N.W.2d 798; *State v. Edwards* (1970), 287 Minn. 83, 177 N.W.2d 40; *State v. Cushman* (Mo. 1970), 451 S.W.2d 17; *State v. Eighth Judicial District Court* (1985), 101 Nev. 658, 708 P.2d 1022; *State v. Merski* (1973), 113 N.H. 323, 307 A.2d 825; *State v. Krammes* (1969), 105 N.J. Super. 345, 252 A.2d 223; *City of Albuquerque v. Jones* (1975), 87 N.M. 486, 535 P.2d 1337; *People v. Bennett* (1977), 89 Misc. 2d 382, 391 N.Y.S.2d 506; *State v. Anderson* (1969), 275 N.C. 168, 166 S.E.2d 49; *State v. Odegaard* (N.D. 1969), 165 N.W.2d 677; *State v. Stouffer* (1971), 28 Ohio App. 2d 229, 276 N.E.2d 651; *Elliott v. City of Oklahoma City* (Okla. Crim. App. 1970), 471 P.2d 944; *State v. Fetterly* (1969), 254 Or. 47, 456 P.2d 996; *Commonwealth v. Kautz* (1985), 341 Pa. Super. 374, 491 A.2d 864; *State ex rel. Colvin v. Lombardi* (1968), 104 R.I. 28, 241 A.2d 625; *Arutanoff v. Metropolitan Government of Nashville & Davidson County* (1969), 223 Tenn. 535, 448 S.W.2d 408; *Ex Parte Smith* (Tex. Crim. App. 1969), 441 S.W.2d

544; *State v. Acker* (1971), 26 Utah 2d 104, 485 P.2d 1038; *State v. Solomon* (1969), 128 Vt. 197, 260 A.2d 377; *State v. Laitinen* (1969), 77 Wash. 2d 130, 459 P.2d 789; *State v. Zektzer* (1975), 13 Wash. App. 24, 533 P.2d 399, *cert. denied* (1975), 423 U.S. 1020, 46 L. Ed. 2d 392, 96 S. Ct. 457; *Bisenius v. Karns* (1969), 42 Wis. 2d 42, 165 N.W.2d 377, *appeal dismissed* (1969), 395 U.S. 709, 23 L. Ed. 2d 655, 89 S. Ct. 2033.) Alternatively, the State contends that the statute being challenged here promotes valid public interests and thus is distinguishable from the motorcycle helmet law found to be unconstitutional in *Fries.*

Defendants are correct in asserting that the primary goal of the section is to protect the individual driver and front-seat passenger from death or serious injury. As such, the statute interferes with the individual's choice concerning his or her personal safety. However, arriving at those conclusions does not *ipso facto* mean that the law is devoid of any public benefit and is unconstitutional. Regardless of a law's primary objective, it will be upheld if it bears a rational relation to a legitimate legislative purpose. (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 368-69; *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 453.) In that regard, the defendants have not persuaded us that the legislature could not have found that the law bears a rational relationship to a legitimate legislative purpose. The legislative debates clearly indicate that the legislators believed that safety-belt use would protect persons other than the belt wearers by helping drivers to maintain control of their vehicles, and that the law would promote that economic welfare of the State by reducing the public and private costs associated with serious injuries and deaths caused by automobile accidents.

During debates in the House of Representatives, a principal sponsor of the safety-belt legislation remarked:

"The Bill would not only protect drivers and passengers in the front seat, the Bill would also protect other people. It would protect other drivers. It would protect pedestrians on our highways and on our sidewalks. The reason for that, of course, is that even a minor *** accident, can if *** a car is driven by a person who doesn't have a seat belt, *** result in that person losing control of the car and injuring other people on or about the car." (83d Ill. Gen. Assem., House Debates, May 16, 1984, at 212 (statement of Representative John Cullerton).)

Another legislator argues that if she were to drive an automobile without her safety belt fastened "and I lose control of my car, I am endangering others." (83d Ill. Gen. Assem., House Debates, May 16, 1984, at 223 (statement of Representative Josephine Oblinger).) The Governor, in signing the seat-belt law, also agreed that the law would help drivers to maintain control of their vehicles and avoid accidents with other motorists and pedestrians:

"Unbelted passengers in a motor vehicle literally become human projectiles in the event of a crash. Unbelted passengers can interfere with the ability of an operator to respond to the collision, and unbelted drivers may lose control of a vehicle and thus cause death and injury to others." Letter of Governor James R. Thompson to the General Assembly indicating his intent to sign House Bill 2800 (Jan. 8, 1985).

The State can enact laws aimed at reducing traffic accidents, since such laws are clearly related to the health, welfare and safety of the public. We also believe that the legislature could rationally conclude that unbelted drivers and passengers endanger the safety of others. In upholding a law similar to the one here under review, the court in *People v. Weber* (1985), 129 Misc. 2d 993, 494 N.Y.S.2d 960, stated:

"A driver who is injured or who is jolted away from his vehicle's controls during a skid or by an initial impact,

> may well be less able to prevent or minimize injuries caused by an accident. Also, an unrestrained occupant of a vehicle may injure others inside or out of the vehicle during an accident. The preventing or reduction of such an injury seems to the Court to be a valid State interest." (129 Misc. 2d 993, ___, 494 N.Y.S.2d 960, 963.)

It also is conceivable that drivers who wear safety belts are less likely to fall asleep at the wheel, or to lose control of their vehicles in situations where the driver must apply the brakes suddenly, or in cases where a vehicle begins to skid or swerve. Safety belts can also prevent passengers from being thrown against the driver. And, as the State observes, children and other occupants who are wearing safety belts are less likely to distract the driver. See *People v. Weber* (1985), 129 Misc. 2d 993, ___, 494 N.Y.S.2d 960, 963; Druhot, *The Constitutionality of the Illinois Mandatory Seat Belt Use Legislation,* 74 Ill. B.J. 290, 296 (1986); Werber, *A Multi-Disciplinary Approach To Seat Belt Issues,* 29 Cleve. St. L. Rev. 217, 244 (1980).

Defendants argue that there is no statistical evidence showing that seat-belt use helps the driver to maintain control of his vehicle and avoid accidents with other motorists or pedestrians. Even assuming this argument is correct, it is without merit. "The fact that a congressional directive reflects unprovable assumptions about what is good for the people *** is not a sufficient reason to find that statute unconstitutional" (*Paris Adult Theatre I v. Slaton* (1973), 413 U.S. 49, 62, 37 L. Ed. 2d 446, 460, 93 S. Ct. 2628, 2638), and a court "will not disturb a police regulation merely where there is room for a difference of opinion as to its wisdom, necessity and expediency." (*City of Carbondale v. Brewster* (1979), 78 Ill. 2d 111, 115. See also *Schuringa v. City of Chicago* (1964), 30 Ill. 2d 504, 515.) Moreover, "the law need not be in every respect logically consistent with its aims to

be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." (*Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 487-88, 99 L. Ed. 563, 572, 75 S. Ct. 461, 464.) Here, we think that the legislature could rationally determine that the seat-belt-use law would serve the public safety and welfare by reducing the likelihood that a driver would lose control of his vehicle and jeopardize other motorists or pedestrians.

Another reason advanced by the State for the section is that the law promotes the economic welfare of the State by reducing the public costs associated with serious injuries and deaths caused by automobile accidents. The legislative history of the section indicates that legislators were concerned about the financial costs associated with highway accidents. Representative Cullerton remarked that the safety-belt legislation "would clearly save money," asserting that "it cost the State over 800,000 dollars for a 26 year old person who is made a paraplegic as a result of a car crash." (83d Ill. Gen. Assem., House Debates, May 16, 1984, at 212 (statement of Representative John Cullerton).) Another Representative stated: "The lives we save and the injuries that we avoid are the injuries and lives that we, the taxpayers, are very likely to be responsible for in the long run. We're not talking about somebody's own individual decision to end up in a car crash and find him or herself in a hospital for 20 years with that individual paying the bill. It's the taxpayers that are going to be paying those bills." (83d Ill. Gen. Assem., House Debates, May 16, 1984, at 220 (statement of Representative Barbara Currie).) Senator James Philip, in urging passage of the seat-belt law, observed that "in 1982 in Illinois some seventy-five people were killed in automobiles [while] performing their job ***. This costs Illinois employers some

twelve million dollars." (83d Ill. Gen. Assem., Senate Debates, June 21, 1984, at 159 (statement of Senator James Philip).) Senator Dawn Netsch remarked: "We intrude because the consequences of the thousands of people *** who are injured and whose afflictions then are passed on to their families, to all of us in society ***." (83d Ill. Gen. Assem., Senate Debates, June 21, 1984, at 162 (statement of Senator Dawn Netsch).) Governor Thompson, in explaining his reasons for signing the legislation, estimated that the seat belt law would "save more than 300 lives in Illinois in the first year, will avoid nearly 43,000 injuries and save more than $400 million in costs." Letter of Governor James R. Thompson to the General Assembly indicating his intent to sign House Bill 2800 (Jan. 8, 1985).

It cannot be seriously questioned that the police power may be used to promote the economic welfare of the State, its communities and its citizens. "[I]n the interest of general welfare, the police power may be exercised to protect citizens and their businesses in financial and economic matters, [and] it may be exercised to protect the government itself against potential financial loss." (*Sherman-Reynolds, Inc. v. Mahin* (1970), 47 Ill. 2d 323, 326.) A law whose aim is to reduce the private and public costs resulting from injuries and deaths caused by motor vehicle accidents is therefore within the police power of the State. In finding that a motorcycle helmet law was rationally related to the public welfare, the court in *Simon v. Sargent* (D. Mass. 1972), 346 F. Supp. 277, *aff'd* (1972), 409 U.S. 1020, 34 L. Ed. 2d 312, 93 S. Ct. 463, stated:

> "From the moment of the injury, society picks the person up off the highway; delivers him to a municipal hospital and municipal doctors; provides him with unemployment compensation if, after recovery, he cannot replace his lost job, and, if the injury causes permanent disability, may

assume the responsibility for his and his family's continued subsistence. We do not understand a state of mind that permits plaintiff to think that only he himself is concerned." (346 F. Supp. 277, 279, *aff'd* (1972), 409 U.S. 1020, 34 L. Ed. 2d 312, 93 S. Ct. 463.)

Because of the drain on private and public financial resources caused by highway accidents, society has a legitimate interest in minimizing injuries which result from such accidents. See *Wells v. State* (1985), ___ A.D.2d ___, 495 N.Y.S.2d 591; *People v. Weber* (1985), 129 Misc. 2d 993, 494 N.Y.S.2d 960; *State v. Eighth Judicial District Court* (1985), 101 Nev. 658, 708 P.2d 1022; *State v. Beeman* (1975), 25 Ariz. App. 83, 541 P.2d 409; *Love v. Bell* (1970), 171 Colo. 27, 465 P.2d 118; See also Druhot, *The Constitutionality of the Illinois Mandatory Seat Belt Use Legislation*, 74 Ill. B.J. 290 (1986); Note, *The Illinois Seat Belt Law: Should Those Who Ride Decide?*, 19 John Marshall L. Rev. 193 (1985); Werber, *A Multi-Disciplinary Approach to Seat Belt Issues*, 29 Cleve. St. L. Rev. 217, 222 (1980).

Defendants make several arguments concerning the effectiveness of safety belts in reducing injuries and arguments regarding the merits of alternative safety devices such as air bags. Defendants also contend that in some instances safety belts may cause injuries instead of preventing them. We need not consider these arguments, however, since they are proper subjects of discussion for the legislature, not the courts. (*Hayden v. County of Ogle* (1984), 101 Ill. 2d 413, 421; *City of Carbondale v. Brewster* (1979), 78 Ill. 2d 111, 115; *Pozner v. Mauck* (1978), 73 Ill. 2d 250, 255.) We believe that the General Assembly could reasonably assume that a law requiring drivers and front-seat passengers to wear safety belts will reduce traffic-related injuries and fatalities. (*Wells v. State* (1985), ___ A.D.2d ___, 495 N.Y.S.2d 591; *People v. Weber* (1985), 129 Misc. 2d 993, 494 N.Y.S.2d 960.)

Therefore, we hold that section 12—603.1 does not violate the due process clauses of the State and Federal constitutions. To the extent that *People v. Fries* (1969), 42 Ill. 2d 446, is inconsistent with our opinion, it is overruled.

Defendant Greene also filed a motion to strike certain portions of the briefs and appendices filed by the State and certain parties *amicus curiae*. This motion was taken with the case. Our review of the record shows that certain safety statistics relied on by the State and the *amicus* were not presented in the trial courts. Accordingly, defendant Greene's motion to strike this information is allowed.

For the reasons stated the judgments of the circuit courts of Marion, Effingham, Fayette and Champaign counties in cause Nos. 62719, 62799, 63705 and 63224 are reversed, and said causes are remanded to those respective courts for further proceedings.

*Motion allowed;*
*judgments reversed;*
*causes remanded.*

CLARK, C.J., and SIMON, J., took no part in the consideration or decision of this case.