No. 65,818

STATE OF KANSAS, *Appellant,* v. JOHN RISJORD, *Appellee,* and

No. 65,819

STATE OF KANSAS, *Appellant,* v. SALLY RISJORD, *Appellee.*

(819 P.2d 638)

498

Opin-
ion filed October 25, 1991.

*Scott C. Gyllenborg,* assistant district attorney, argued the cause, and *W. Scott Toth,* assistant district attorney, *Paul J. Morrison,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for appellant.

*Aaron N. Woods,* of Risjord & James, of Overland Park, argued the cause, and *Randy W. James,* of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

HERD, J.: In this appeal the State of Kansas appeals a trial court finding that a Johnson County Park and Recreation District regulation which restricts horseback riding within certain parks is unconstitutional.

On May 28, 1990, Sally and John Risjord were horseback riding on Barkley Drive, a public roadway in Shawnee Mission Park. On that date, the Risjords were charged with violation of Article 1, Section 6 of the Johnson County Park and Recreation District Rules and Regulations for riding horses in the park without dis-

playing valid riding permits. The Risjords were found guilty of violating the regulation in Johnson County Traffic Court.

The Risjords appealed to the district court and a trial de novo was held on October 4, 1990. Sally and John each stipulated they were riding in the park without a valid permit. They argued, however, that the regulation unconstitutionally regulated horse-drawn or horseback transportation on public roadways in violation of the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution and the applicable sections of the Kansas Constitution.

The district court determined the park governing board could not constitutionally prohibit horseback riding as a means of conveyance on the park roadways where other forms of transportation were not prohibited. In addition, the district court found the board could not charge for the use of park roadways simply because the elected mode of transportation was by horseback. The case was dismissed and the State appeals.

The sole issue presented in this appeal is whether Article 1, Section 6, of the Johnson County Park and Recreation District rules and regulations unconstitutionally regulates horseback riding on public roadways.

K.S.A. 19-2868(g) empowers the Johnson County Park and Recreation District Board (Board) to adopt, promulgate, and enforce reasonable rules and regulations for the operation of parks. In addition, the Board is authorized to prescribe penalties for violation of any rules and regulations. K.S.A. 1990 Supp. 19-2873. Finally, the Board is statutorily prohibited from charging an admission fee into a park, but is authorized to charge a reasonable fee for recreational activities. K.S.A. 1990 Supp. 19-2873.

Article 1, Section 6 of the Board rules and regulations provides:

"HORSEBACK RIDING: In the interest of public safety, horses may only be ridden in designated areas at Shawnee Mission Park and Heritage Park. Horses shall not be ridden on the park's paved roadways or asphalt trails except at designated horse crossings, where horses may cross at right angles to vehicular traffic. Each horse being ridden in the park area is required to have a visibly displayed, valid horseback riding permit."

Before we consider the validity of this regulation, let us review the general principles applicable to appellate review of the constitutionality of a statute, ordinance, or regulation.

" 'The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. [Citations omitted.]

" 'In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. [Citations omitted.]

" 'Statutes are not stricken down unless the infringement of the superior law is clear beyond substantial doubt. [Citations omitted.]

. . . .

" 'The propriety, wisdom, necessity and expedience of legislation are exclusively matters for legislative determination and courts will not invalidate laws, otherwise constitutional, because the members of the court do not consider the statute in the public interest of the state, since, necessarily, what the views of members of the court may be upon the subject is wholly immaterial and it is not the province nor the right of courts to determine the wisdom of legislation touching the public interest as that is a legislative function with which courts cannot interfere. [Citations omitted.]' *State ex rel. Schneider v. Kennedy,* 225 Kan. 13, 20-21, 587 P.2d 844 (1978).

"The general rule for reviewing statutes or ordinances enacted pursuant to the police power is stated in *City of Wichita v. White,* 205 Kan. 408, 469 P.2d 287 (1979), as follows:

'In reviewing statutes such as these, the court begins with the proposition that all presumptions are in favor of their validity. [Citations omitted.] The court does not sit in judgment on the merits of such legislation. If the statute here challenged does not contravene significant constitutional or inherent rights of individuals, if the classification on which it is based is reasonable, if it is within the scope of the police powers of the state, if it is appropriately related to a proper purpose of such police power, the statute is not to be invalidated by the judicial arm of government.' [Citation omitted.]

"In *State, ex rel., v. Fairmont Foods Co.,* 196 Kan. 73, 76-77, 410 P.2d 308 (1966), we said:

'Once a subject is found to be within the scope of the state's police power, the only limitations upon the exercise of such power are that the regulations must have reference in fact to the welfare of society and must be fairly designed to protect the public against the evils which might otherwise occur. Within these limits the legislature is the sole judge of the nature and extent of the measures necessary to accomplish its purpose. [Citations omitted.]

. . . .

'The reasonableness of restrictions imposed by the legislature by the exercise of the police power is a judicial matter, and all presumptions are in favor of constitutionality of the act. Within the zone of doubt and fair debate legislation is conclusive upon the court and must be upheld. [Citations

omitted.]' " *City of Baxter Springs v. Bryant*, 226 Kan. 383, 385-86, 598 P.2d 1051 (1979).

Cities and other governmental bodies have broad police powers to enact ordinances which regulate and restrict activities in the interest of the health, safety, and welfare of their citizens. *Leavenworth Club Owners Assn. v. Atchison*, 208 Kan. 318, 320, 492 P.2d 183 (1971). It is well settled that governing bodies may properly exercise their police power to limit, control, or regulate the use of public roadways to promote the safety and general welfare of the people. *Manzanares v. Bell*, 214 Kan. 589, 600, 522 P.2d 1291 (1974); *Riddle v. State Highway Commission*, 184 Kan. 603, 611, 613, 339 P.2d 301 (1959). Thus, the Board was acting within the scope of its police power when it enacted the regulation under consideration.

The Risjords contend that the Board regulation which prevents horseback riders from traversing the park on public roadways violates the fundamental right to travel. See *Shapiro v. Thompson*, 394 U.S. 618, 629, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969). Since a fundamental right is violated by the regulation, the Risjords argue, we must apply a "strict scrutiny" test rather than the traditional "rational basis" test to determine the constitutionality of the regulation. It is true that the "standard of scrutiny increases with the perceived importance of the right or interest involved and the sensitivity of the classification." *Farley v. Engelken*, 241 Kan. 663, 669, 740 P.2d 1058 (1987). The United States Supreme Court has utilized three levels of judicial review when determining whether a statute, ordinance, or regulation violates the due process or equal protection clause of the Fourteenth Amendment.

The most critical level of analysis is "strict scrutiny," which applies in cases involving "suspect classifications such as race, ancestry, and alienage, and fundamental rights expressly or implicitly guaranteed by the Constitution." *Farley*, 241 Kan. at 669. When applying the strict scrutiny test, the burden is placed upon the State to show there is a compelling state interest in the statute, ordinance, or regulation; otherwise it is unconstitutional.

The least critical level of analysis is the "rational" or "reasonable" basis test. Under the "rational basis" test, if there is any rational relationship between the act and a legitimate govern-

mental objective, the act passes muster. Under this test one challenging the constitutionality of the act bears the burden of showing no rational relationship exists between the means and the end.

Finally, "heightened scrutiny" is the intermediate level of review used by the United States Supreme Court and is applicable to "quasi-suspect" classifications. This court has not adopted the "heightened scrutiny" level of judicial review when applying the Kansas Constitution. Gender- and legitimacy-based classifications have been subjected to intermediate-level scrutiny. Heightened scrutiny "requires the statutory classification to substantially further a legitimate legislative purpose. Under this standard, a greater justification for the statutory classification than is required under the rational basis analysis must be shown, including a direct relationship between the classification and the State's goal." *Farley*, 241 Kan. at 669.

An argument similar to the Risjords' was asserted in *Manzanares v. Bell*, 214 Kan. 589, wherein we considered the constitutionality of a legislative act requiring owners and operators of motor vehicles to purchase vehicle liability and first-party coverage benefits. 214 Kan. at 600. We found there was no reason to apply the compelling state interest test because the act affected all owners and operators of certain vehicles alike and did not affect the right to travel freely. No fundamental right was affected. Instead, we found the act was a valid exercise of police power to regulate traffic by establishing a condition precedent for operating a motor vehicle on public roadways. The governmental interest of protecting those who use public roadways was held to justify the compulsory liability and first-party insurance coverage. Thus, the rational basis test was applied to determine whether the act violated due process and equal protection principles. 214 Kan. at 600-02.

In the present case, the Risjords assert that the right to travel is a fundamental right. *Shapiro*, 394 U.S. at 629; *Manzanares*, 214 Kan. at 600. We agree that the right to travel is a fundamental right but disagree with the argument that this regulation affects that right. Appellees have available to them all of the various modes of travel such as by automobile, bicycle, motorcycle, airplane, bus, train, or foot—all subject, of course, to regulation for

safety. This regulation does not curtail the Risjords' fundamental rights; thus, the rational basis test is applicable.

Now let us turn to the question of regulation of horseback riding which applies to all equestrians alike and determine if it violates the due process or equal protection clause of the Fourteenth Amendment. The interest affected by the regulation is not the freedom to travel but regulation of travel. The Board regulation restricts the mode of conveyance that may be used on the park roadways. As we previously stated, the Board may validly exercise its police powers to limit or control the use of public roadways whenever necessary to promote the safety and general welfare of the people. *City of Wichita v. White*, 205 Kan. 408, 412, 469 P.2d 287 (1970). Finally, we recognize that preventing accidents and reducing the seriousness of accidents on public roadways is a legitimate governmental interest. *Manzanares*, 214 Kan. at 601; *City of Wichita*, 205 Kan. at 412. Thus, the governmental interest justifies the issuance of a regulation prohibiting equestrians from use of public roadways by limiting the non-vehicular traffic on the roadways.

The test to determine the constitutionality of a regulation under due process and equal protection principles is virtually the same. When a statute or regulation is attacked as violative of due process, the test is whether the legislative means selected have a real and substantial relation to the objective sought. *Clements v. United States Fidelity and Guaranty Co.*, 243 Kan. 124, 127, 753 P.2d 1274 (1988). When a statute or regulation is attacked as violative of equal protection principles, a reasonable basis test is applied to determine whether any situation exists which justifies the classification. *State v. Moore*, 237 Kan. 523, 530, 701 P.2d 684 (1985). A classification that has some reasonable basis does not offend equal protection laws even if the classification results in some inequality. *Dandridge v. Williams*, 397 U.S. 471, 485, 25 L. Ed. 2d 491, 90 S. Ct. 1153, *reh. denied* 398 U.S. 914 (1970). There need not be an exact exclusion or inclusion of persons or things, but the classification may not be created arbitrarily, discriminatorily, or unreasonably. *Magoun v. Illinois Trust & Savings Bank*, 170 U.S. 283, 296, 42 L. Ed. 1037, 18 S. Ct. 594 (1898); *Henry v. Bauder*, 213 Kan. 751, 753, 518 P.2d 362 (1974).

The State contends the Board regulation bears a reasonable relation to its legislative objective of promoting public safety. The State asserts horses are not allowed on the park roadways because asphalt can be .slick and dangerous to both horse and rider. In addition, these roadways accommodate large volumes of vehicular, pedestrian, and bicycle traffic. According to the State, horseback riding on park roadways is hazardous to both the rider and other traffic; thus, prohibiting equestrians from using the park roadways reduces the danger .not only for the rider but also for the general public.

The Risjords argue that the regulation is not reasonable and that the State has failed to demonstrate that horseback riding on public roads is more dangerous than other forms of transportation. The Risjords contend that a slippery road is also dangerous for pedestrians, bicyclists, roller skaters, joggers, and motorcyclists. Thus, they allege the regulation which prohibits horseback riding on the park's public roadways is invidiously discriminatory.

Regulating traffic on public roadways to promote public safety is a legitimate legislative objective. Recognizing innate differences of various vehicles using highways is a legitimate reason for governing bodies to regulate the use of those vehicles based upon differences in their characteristics. *Manzanares,* 214 Kan. at 613; see *City of Wichita v. White,* 205 Kan. at 411.

In *City of Colby v. Hurtt,* 212 Kan. 113, 116, 509 P.2d 1142 (1973), we found a city ordinance which restricted the location of mobile homes to designated areas was not constitutionally void. This court recognized that although mobile homes served as a residence, special characteristics warranted separate regulation. Furthermore, in *State v. Moore,* 237 Kan. at 533-34, we found that a vehicular classification based solely upon the distinction between private vehicles and vehicles owned by a political subdivision had a rational basis and did not violate constitutional principles.

In the present case, the regulation prohibiting equestrians from using public roadways within the park is reasonably related to the governmental objective of promoting public safety, health, and general welfare. All equestrians are treated alike. The Board has determined that horseback riding on asphalt roads poses a potential hazard to riders and other traffic. In addition, the dis-

tinct characteristics of horses present a justifiable reason for creating a separate regulation based upon both health and safety concerns. A horseback rider cannot exert the same control over the horse's movements as could the driver of a motor vehicle or bicycle. Sanitary concerns also justify the regulation of restricting horses to designated areas. Finally, we conclude that limiting traffic on public roadways to exclude animal traffic is a valid exercise of the Board's police power. Therefore, we hold the park regulation does not violate either the due process or equal protection clauses of the United States Constitution or the Kansas Constitution.

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.