OPINION OF THE COURT
Myron E. Tillman, J.
The court has before it a motion made by the Attorney-General for summary judgment in this declaratory judgment action.
The plaintiff herein was issued a traffic citation in the City of Corning, New York, for failure to wear his seat belt while operating his motor vehicle in violation of Vehicle and Traffic Law § 1229-c, commonly known as the "Seat Belt Law”. Upon appearance in Corning City Court, the plaintiff asked for and received a stay of prosecution in order to pursue this declaratory judgment action.
Plaintiff’s complaint alleges that the "Seat Belt Law” exceeds constitutional limitations. Specifically, that his right to privacy and those rights guaranteed by US Constitution 4th, 9th, 10th and 14th Amendments have been violated. In addition, the complaint alleges that the law "is beyond the power granted the legislature by Article III, Section 1 of the Constitution of the State of New York.”
Plaintiff, in his affidavit in opposition to this motion, and his counsel, in oral argument, submitted that there are triable issues of fact. They argue that this court must explore the intent of the Legislature by ordering a hearing. Their argument contends that this court cannot assume that the generally articulated intent of the Legislature was to promote the *115 health, safety and welfare of the people. Plaintiffs counsel questioned the "hidden intent” or the "political intent” of individual lawmakers in passing this bill (i.e., reference to the number of times similar legislation had been introduced, but failed to pass).
It is well established in the law that the granting of a summary judgment motion constitutes a drastic remedy. The cases stating this concept are so well known and so numerous as to make their citation unnecessary. This concept, however, does not preclude the granting of summary judgment where there is no triable issue of fact. In order to defeat a motion for summary judgment, the plaintiff herein must do more than submit arguments based upon surmise, conjecture and suspicion. (Gray Mfg. Co. v Pathe Indus., 33 AD2d 739 [1969], affd 26 NY2d 1045; Dabney v Ayre, 87 AD2d 957 [1982].) An affidavit of an attorney lacking personal knowledge of the facts is without probative value and should be disregarded. (Starbo v Ruddy, 66 AD2d 950 [1978].)
Plaintiff, by means of his own affidavit, uses conjecture and surmise to pose questions as to the individual intents of the lawmakers. A court may not inquire into the motives of the State Legislature. There is a well-established presumption in favor of the constitutionality of a legislative enactment. (People v Pace, 111 Misc 2d 488 [1981].) Every legislative enactment carries with it a presumption that there existed the necessary factual support for its provisions. (Betty-June School v Young, 195 NYS2d 16 [1959], mod on other grounds 10 AD2d 648; Turner Nurses Agency v State of New York, 17 Misc 2d 273 [1959].) The presumption that the determination of the Legislature is supported by facts known to it obtains unless facts judicially known or proved preclude that possibility. (Mid-States Frgt. Lines v Bates, 200 Misc 885 [1952], affd 279 App Div 451, affd 304 NY 700, mot for rearg denied 304 NY 788, cert denied 345 US 908.) The fact that legislation of a similar nature has been introduced but failed to pass on many occasions is not one that persuades the court that it may explore the area of legislative intent. There is little question that what motivates one legislator to propose or make a speech urging the passage of a statute is not necessarily what motivates scores of others to enact it. (United States v O’Brien, 391 US 367, 383-384.) If under any possible state of facts an act would be constitutional, the courts will not make a separate investigation of the facts or attempt to decide whether the Legislature has reached a correct conclusion with respect *116 to them. The Legislature is presumed to have investigated and found the necessary facts.[1] Judicial restraint in this regard is an important recognition of the separate powers of our three governmental branches.
Judicial inquiry into legislative intent is only appropriate as an aid to statutory interpretation, and then only when the statute in question is so ambiguous that the court must consult the legislative purpose in order to determine whether the statute applies to the particular case. (Matter of Roosevelt Raceway v Monaghan, 9 NY2d 293, 304 [1961]; Matter of Mosley v Gorfinkel, 81 Misc 2d 999, 1001 [1975].)
Plaintiff relies on Consumer-Farmer Milk Coop. v Wickham (25 AD2d 413) for his contention that summary judgment is precluded where the issue of the constitutionality of a statute is involved. This reliance is misplaced. Wickham (supra) raised the question of whether or not appellant’s activities involved transactions in interstate commerce, the commerce clause (US Const, art I, §8, [3]), which would, if proved, inhibit the power of the State to regulate those activities. This was clearly a factual issue which precluded summary judgment.
In the case at bar there is no factual issue before this court which would preclude the court from entertaining the motion before it.
Plaintiff, in his complaint, claims that enactment of the "Seat Belt Law” is beyond the power of the Legislature. In oral argument before the court, plaintiff was emphatic in his view that the limits of the police power should be restricted and jealously guarded.
The sovereign power, which rests in all of the States of the Union, is that legislative function which has not been limited by the Federal or State Constitutions. The legislative function is unlimited and practically absolute.[2] This inherent sovereign power is commonly referred to as the police power. The definition of the police power has proved elusive, but the approach to individual cases has been pragmatic, making this a gradual growing body of the law in the best tradition of the common law. In spite of the breadth of the police power and the total uncertainty of limitations from any standpoint of *117 firm definition or established rigidity, it is undeniably subject to both specific and general constitutional provisions.[3]
The complaint herein expands the concept that the "Seat Belt Law” is beyond the power of the Legislature to enact by declaring that the law "deprives Plaintiff of his right to make an intelligent decision which pertains solely to his person and his personal safety.”
The amicus curiae brief before the court took the view that plaintiff relied on the constitutional and philosophical limitation of governmental power (the philosophy enunciated by the 19th centry British philosopher, John Stuart Mill). The amicus brief attempts to demonstrate how this philosophy (the concept that the individual is not accountable to society for his actions insofar as these acts affect no person but himself) has been rejected by authoritative judicial precedents. The United States Supreme Court has rejected Mill’s maxim as a measure of State legislative power. Specifically, they point out that it would prevent prosecutions for obscenity, suicide, self-mutilation, adultery, and gambling, among other offenses (see, Paris Adult Theatre v Slaton, 413 US 49, 68, nn 14, 15 [1973]).
Counsel for plaintiff, in oral argument, discussed the concept of individual liberty and relied upon the maxims of Thomas Jefferson, in particular that the liberty of the individual should be jealously guarded. He declared that the "Seat Belt Law” set a dangerous precedent infringing basic individual liberty and personal freedom. Counsel gave the court examples of the extremes to which this governmental act by way of precedent could take us if this "Seat Belt Law” was not found unconstitutional (example: legislative prohibition of smoking).
Ultimately, all social legislation affects someone’s "freedom”; competing interests have to be carefully weighed and a reasonable and rational relationship to the purpose for which the police power has been exercised must be demonstrated. Plaintiff views this statute as a confrontation between the right of the individual to determine his own fate and the power of the State to interfere with this determination. This argument ignores the democratic concept of the consent of the people. In a democracy the government governs with the consent of the governed. The State’s police power is ill defined and often vunerable to abuse. In a representative government the people must be vigilent and exercise their power. They *118 must change their elected representatives if they disagree with their collective legislative acts. If the liberty of the individual is the only criteria one has, then the logical extension of that concept, in the extreme, is anarchy. As Winston Churchill said, "Many forms of government have been tried and will be tried in this world of sin and woe. No one pretends that democracy is perfect or all wise. Indeed, it has been said that democracy is the worst form of government, except all those other forms that have been tried from time to time.” (Churchill, Nov. 11, 1947, House of Commons.)
Plaintiff submitted that Roe v Wade (410 US 113) stands for the concept of "my body, my integrity”. However, Roe (supra) does say that the State might invade that sanctuary under certain circumstances based upon the theory that the individual does not have an unlimited right to abuse or invade his or her own body. More importantly, however, the issue of one’s right to control one’s own body, and the government’s attempt to interfere with what takes place inside that body, can hardly be compared with the State’s interference with the liberty of the individual inside his or her automobile.
Plaintiff submits that in People v Onofre (51 NY2d 476, 494) the Court of Appeals recognized the protection afforded the individual of his personal integrity and autonomy. This interpretation of Onofre (supra) ignores the fact that the majority were at pains to distinguish Onofre (supra) from their decision in People v Shepard (50 NY2d 640). Shepard (supra) was a decision based on the legislative finding that the drug, marihuana, was sufficiently harmful to warrant punishing its possession. Onofre (supra), by contrast, was based on the fact that neither the People nor the dissent had cited any authority or evidence that the practice of consensual sodomy in private is harmful.
Clearly, the majority felt that the showing of harm to the individual was a basis upon which the protection to personal autonomy might be infringed.
This court must determine whether a law compelling motorists to use a seat belt advances the State’s interest in protecting the health, safety and welfare of its citizens. Legislation tending to promote this interest is a proper exercise of the State’s police power.[4] An appropriate test, then, for any legislation which mandates public conduct and restricts indi *119 vidual choice should measure a statute in light of its reasonable and rational relationship to the purpose for which the law was enacted.
Numerous studies, both here and abroad, have demonstrated that the use of seat belts does significantly lower, not only mortality rates, but the severity of injuries in automobile crashes.[5] The manual lap and shoulder belt has been standard equipment in all cars built in the United States since 1967, and a comprehensive analysis conducted by the University of Michigan in 1980[6] of thousands of accidents postulated that such restraints are 40 to 50% effective in reducing fatalities and even more effective in reducing moderate to critical injuries. The Governor’s message, in approving the "Seat Belt Law”, indicated those recommending approval of the legislation. Among, but by no means least, of these recommendations the New York Public Interest Research Group, Inc. pointed out that "requiring seat belt use for public safety reasons is in no way related to the bleak, soul-killing totalitarianism of Orwell’s novel.” (Governor’s approval memorandum of L 1984, ch 365, appendix 23.) The New York State Automobile Association informed the Governor that in a poll taken in May 1984, members of the Automobile Club of New York favored mandatory seat belt use by 70% of more than 5,000 members (Governor’s approval memorandum, op. cit., exhibit 36).
The State has a compelling interest in saving lives (the ultimate goal in the promotion of health and safety), but in addition to this, the State has an interest in promoting the welfare of its citizens. The cost to society of the results of death or severe injuries is enormous. The long-term care, often extending to lifetime care, of paraplegics, quadraplegics and patients on life-support systems devolves on the State. Each year 700,000 persons are hospitalized with head injuries; over 100,000 of those persons will die, another 30,000 to 50,000 will sustain brain damage severe enough to cause prolonged hospitalization and rehabilitation for intellectual, physical or behavioral impairment. A very large percentage of those persons will never return to a normal life or be able to work, and the cost to this Nation is over $15 billion annually. (Governor’s approval memorandum, op. cit., exhibit 38.)
*120 This aspect of highway safety was discussed and approved as a proper State interest in a United States District Court in Massachusetts, responding to a claim that the mandating of protective headgear for motorcyclists deprived them of freedom of choice and that such choice did not affect the public welfare, when the court stated society’s interest in minimizing highway accidents. (Simon v Sargent, 346 F Supp 277 [1972]; see also, Love v Bell, Col., 171 Col 27, 465 P2d 118.)
Plaintiff submits that wearing a seat belt is within the realm of personal autonomy and that his decision to wear a seat belt should be his alone. This issue has also been addressed in a case involving a State motorcyclist helmet requirement when the court said: "Death on the highway can no longer be considered as a personal and individual tragedy alone. The mounting carnage has long since reached proportions of a public disaster. Legislation reasonably designed to reduce the toll may for that reason alone be sufficiently imbued with the public interests to meet the constitutional test required for a valid exercise of the State’s police power.” (State v Anderson, 3 NC App 124, 126, 164 SE2d 48, 50, affd 275 NC 168,166 SE2d 49.)
The thesis that the mandatory "Seat Belt Law” reduces the carnage on our roads from automobile accidents has been supported by experience in New York State. The State has experienced an 18% decrease in occupant fatalities during the first six months that the law has been enforced. Ninety-seven less lives have been lost in 1985 when compared to 1984. Measuring the first five months of 1984 and 1985, national fatalities were up 4.1%. New York fatalities were down 9% in the same period (all categories of fatals). In addition, the miles traveled in the period January through June were up by nearly one billion miles (2.5%). In the period January through April, the number of injured occupants was down by 8.4% over 1984, and this despite an increase in occupants of 1 to 3%. Moreover, restraint use has gone from 16% before the law to 69% after January 1, 1985 (the effective date), and recent surveys show a 57% usage.[7] With greater compliance the figures would no doubt be even more impressive. Other factors may have impact on these statistics, but the mandatory "Seat Belt Law” is the most significant change during this time of enactment in New York.
*121 The plaintiff, personally in oral argument, raised the issue of the danger of the seat belt. He contended that its use had been known to cause severe injury and death. No probative evidence was submitted to the court to support this contention, nor did the complaint plead that use of the seat belt is not reasonably related to a valid exercise of the police power. This issue as to whether the seat belt is the perfect remedy or whether, on balance, its benefits outweigh its disadvantages is a policy question, not a justiciable consideration. However, even had the complaint raised the issue of the effectiveness of the seat belt, the point was dealt with by the Court of Appeals in Spier v Barker (35 NY2d 444 [1974]). The court gave recognition to the fact that seat belts save lives. This court may take judicial notice of this decision and its finding. (Slater v Slater, 208 App Div 567, affd 240 NY 557; People v Herkimer, 4 Cow 345 [NY]; Kane v Walsh, 295 NY 198.) Where a matter can be established by judicial notice, it need not be inquired into by evidentiary trial. (People v French Bottling Works, 259 NY 4, 7.) Judicial notice is appropriate on pretrial motions that seek the dismissal of plaintiff’s case. (Pfleuger v Pfleuger, 304 NY 148.)
Plaintiff’s complaint appears to raise an equal protection issue by reference to the 14th Amendment, although this is not specifically pleaded.
In Vehicle and Traffic Law § 1229-c (9), there are exemptions not only for rear seat passengers over a certain age in privately owned vehicles, but for "taxis, liveries, tractors, trucks with a maximum gross weight of eighteen thousand pounds or over, and buses other than school buses.”
The classifications created by the statute are not based on race, alienage, age or nationality and, therefore, the strict scrutiny test to determine whether the challenged law is "necessary to promote a compelling governmental interest” is not indicated. (Shapiro v Thompson, 394 US 618, 634.) Needed is a "rational basis” test to determine whether the varied treatment of separate classifications of citizens "rests on grounds wholly irrelevant to the achievement of the State’s objective.” (McGowan v Maryland, 366 US 420, 425.) When a State regulates a problem it is not under any obligation to regulate all phases of it or every class of acts or actors involved in it (Williamson v Lee Opt. Co., 348 US 483, 489 [1955]); on the contrary, the State may regulate partially or one step at a time without violating the 14th Amendment’s equal protection clause. (Williamson v Lee Opt. Co., supra.)
*122 This court, upon hearing the plaintiff personally in oral argument before the court, is aware and respectful of plaintiffs sincere and strongly held views. The court, too, is an admirer of Thomas Jefferson and those framers of our Constitution, who so persuasively espoused ideas which would protect the individual from governmental tyranny over the minds, bodies and lives of its citizens. At issue in all legislative action involving personal freedom is the application of those principles. The court acknowledges probable disagreement with this court’s judicially applied determination in this case, under these facts. We can only defer to that best and most basic concept of our founding fathers which allowed differing beliefs and defended at all costs their fellow citizens’ right to their disagreement.
In addition, every court who reflects on these most fundamental concepts cannot forego a respectful restraint when considering the powers and rights of another constitutionally established branch of government.
The plaintiff, subsequent to the hearing, submitted a letter to the court, together with a letter from Paul Cozad of the Human Factors Consultants, which dealt with the interpretation of statistics. This court cannot consider this submission over the objection of the Attorney-General. The letter does not address the legal issues, but sets forth Mr. Wells’ political philosophy and views. Despite this, even if the court did consider this submission, the interpretation of data is not a function of the courts. Under the separation of powers doctrine, one of the most fundamental principles of the American constitutional system, governmental powers are divided among the three departments of government — legislative, executive and judicial — and each of these is separate from, and may not infringe on the independence of the others. Clearly, it is a function of the Legislature to interpret data, the function of the court is to see that the legislation subsequently passed bears a rational relationship to the goals to be achieved.
The court finds that the New York State mandatory “Seat Belt Law” is a valid constitutional exercise of legislative power and, therefore, grants the motion for summary judgment.

. 20 NY Jur 2d, Constitutional Law, § 73 (Legislative determination of facts as binding), and cases cited thereunder.

. 20 NY Jur 2d, Constitutional Law, § 163 (Nature of Power), and cases cited thereunder.

. 20 NY Jur 2d, Constitutional Law, § 190, and cases cited thereunder.

. See generally, 20 NY Jur 2d, Constitutional Law, § 231 (Physical welfare; public health and safety), and cases cited thereunder.

. See generally, 16 Am Jur, Proof of Facts, at 353 et seq., and Sept. 1985 Supplement, at 117 et seq.

. University of Michigan Highway Safety Research Institute, June 1980. NCSS Statistics: Passenger Cars Report No. UM-HSRI-80-36.

. Result of Occupant Restraining Law, State of New York, Governor: Traffic Safety Committee.