**Raymond Duane RICHARDS, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–86–00780–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 31, 1987.

Raymond D. Richards, Jr., pro se.

John B. Holmes, Jr., Kathlyn Giannaula, Joseph Ownby, Houston, for appellee.

Before JACK SMITH, LEVY and HOYT, JJ.

## OPINION

JACK SMITH, Justice.

The primary issue in this case is the constitutionality of the Texas seat belt law. Appellant was convicted of violating the seat belt law by a municipal court, and appealed the conviction to a Harris County criminal court at law. The county criminal court at law also found him guilty, assessing a $35.00 fine and costs. On appeal to this Court, appellant asserts that Tex.Rev. Civ.Stat.Ann. art. 6701d, sec. 107C (Vernon Supp.1987) (the "Act") violates the due process and the equal protection clauses of the Texas and United States Constitutions. U.S.Const. amend. XIV; Tex.Const. art. I, secs. 3 and 19.

Appellant admitted to operating a motor vehicle on a public street without wearing a safety belt on June 14, 1986. However, he pleaded not guilty to the charge of violating the Act because he felt that the Act was unconstitutional.

In his first two points of error, appellant contends that the court failed to apply the correct standard of review as to the constitutionality of the Act, and to hold that the Act violated the due process clauses in the Texas and the United States Constitutions. U.S.Const. amend. XIV; Tex.Const. art. I, secs. 3 and 19. Specifically, he contends that the Act violates his fundamental right to be free from bodily restraint.

Freedom from bodily restraint arises from the Constitution's protection of liberty. The liberty interest that is protected is not merely freedom from bodily restraint, but also includes the right of the individual to contract, to engage in other common occupations of life, and generally to enjoy those privileges long recognized as essential to the orderly pursuit of happiness by free men. *Peacock v. Board of Regents of Univ. and State Colleges of Arizona*, 380 F.Supp. 1081 (D.Ariz.1974), *aff'd*, 510 F.2d 1324 (9th Cir.), *cert. denied* 422 U.S. 1049, 95 S.Ct. 2668, 45 L.Ed.2d 701 (1975). The Constitution:

speaks of liberty and prohibits the deprivation of liberty without due process of law. In prohibiting that deprivation, the Constitution does not recognize an absolute and uncontrollable liberty. Liberty in each of its phases has its history and connotation. But the liberty safeguarded is liberty in a social organization which requires the protection of law against the evils which menace the health, safety, morals, and welfare of the people. Liberty under the Constitution is thus necessarily subject to the restraints of due process, and regulation which is reasonable in relation to its subject and is adopted in the interest of the community is due process.

*West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 391, 57 S.Ct. 578, 581–82, 81 L.Ed. 703 (1937). In other words, the liberty guaranteed by the 14th amendment implies absence of arbitrary interferences, but not immunity from reasonable regulations. *Gere v. Stanley*, 453 F.2d 205, 209 (3d Cir.1971).

Due process requires a balancing of interests between the parties. When interests of an individual reach a level of a fundamental or a constitutionally protected right, then the legislation must be strictly scrutinized. *San Antonio Indep. School*

*Dist. v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973). If, however, a statutory inhibition does not implicate some personal constitutional protection, its validity is determined by the rational basis test. *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972); *Williams v. State,* 588 S.W.2d 593, 596 n. 4 (Tex.Crim.App.1979). "That is, the law will be upheld if it bears a rational relation to a legitimate legislative purpose and is neither arbitrary nor discriminatory." *Williamson v. Lee Optical,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955); *see also Alobaidi v. State,* 433 S.W.2d 440 (Tex.Crim.App.), *cert. denied,* 393 U.S. 943, 89 S.Ct. 313, 21 L.Ed.2d 281 (1968).

Appellant has cited no cases that specifically support his contention that freedom from restraint by a seat belt in an automobile is a fundamental or constitutionally protected right. In fact, cases show that states are allowed great leeway in regulating their public roads and highways. *See Bibb v. Navaho Freight Lines, Inc.,* 359 U.S. 520, 530, 79 S.Ct. 962, 968, 3 L.Ed.2d 1003 (1959) (court held power of the states to regulate their highways to be broad and pervasive); *Ex parte Smith,* 441 S.W.2d 544 (Tex.Crim.App.1969) (court upheld Texas statute requiring motorcyclist to wear protective head gear, stating "it is clearly within the State's police power to regulate ... in the interest of public safety and welfare"); *People v. Kohrig,* 113 Ill.2d 384, 101 Ill.Dec. 650, 498 N.E.2d 1158 (1986) (court upheld constitutionality of seat belt law, holding that it does not infringe on fundamental right to privacy protected by 14th amendment); *Wells v. State,* 130 Misc. 2d 113, 495 N.Y.S.2d 591 (N.Y.Sup.Ct.1985) (court held that seat belt law was not unconstitutional on the grounds that it exceeded police power or violated equal protection).

In considering the constitutionality of the Texas mandatory seat belt law, it is not the function of the courts to decide whether the law is desirable or necessary. The issue is "not what the legislature should do but what the legislature can do." *See City of Wichita v. White,* 205 Kan. 408, 409, 469 P.2d 287, 288 (1970).

The State offered evidence by an expert witness to show that the purpose of the Act was to reduce injuries and/or death in traffic accidents. The expert testified that this was a reasonable means of fulfilling the Act's purpose, and stated that there was "a significant drop in fatalities especially after the seat belt laws went into effect."

It is manifest that when there is a conflict between the liberties of an individual and the police power of the state, the courts must use a balancing test to determine the rights of the parties. If the legislation involved has a rational relationship to a legitimate state interest, then it is justified. In the present case, there is evidence that the Texas seat belt law serves the public safety and welfare by enhancing a driver's ability to maintain control of his vehicle, and by reducing injuries not only to himself, but also to others, all of which directly affects the state's economic welfare.

■ Appellant complains that because the Act does not make it mandatory for back seat passengers of an automobile to wear a seat belt, that it is inconsistent with the aims of the legislature in reducing injuries, thereby making the Act unconstitutional. It is not necessary that an act be logically consistent in all respects to be constitutional. As stated in *Williamson v. Lee Optical,* 348 U.S. at 487–88, 75 S.Ct. at 464:

> The law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.

■ We conclude that the Act bears a rational relationship to the legitimate legislative purpose of reducing injuries and/or fatalities in traffic accidents. We also conclude that the Texas legislature had a legitimate interest in limiting appellant's constitutional right to liberty when it enacted the Texas seat belt law. We further conclude

that the Act was drawn to express only the legitimate interest at stake.

We find nothing in the record before this Court that indicates that the trial court used an improper standard of review in determining the constitutionality of the Act.

Appellant's points of error one and two are overruled.

■ In his final point of error, appellant complains that the court erred in failing to hold the Act unconstitutional under the equal protection clauses of the Texas and United States Constitutions. U.S. Const. amend. XIV; Tex. Const. art. I, sec. 3. He contends that the Act discriminates between passengers in the front seat and those in the rear seat, and that is discriminates between postal employees and all other individuals.

The classifications created by the statute are not based on race, alienage, age, or nationality. Therefore, the rational basis test is used to determine whether the varied treatment of separate classifications "rests on grounds wholly irrelevant to the achievement of the state's objective." *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *Id.* at 426, 81 S.Ct. at 1105. "When a state regulates a problem it is not under any obligation to regulate all phases of it or every class of acts or actors involved in it." *Williamson v. Lee Optical,* 348 U.S. at 489, 75 S.Ct. at 465. "On the contrary, the state may regulate partially or one step at a time without violating the 14th [a]mendment's equal protection clause." *Id.* Therefore, appellant's complaint as to the front seat and rear seat classifications is without merit.

■ With regard to the postal employee exemption, appellant has failed to show that he has standing to challenge this classification. When challenging the constitutionality of a statute, appellant must show it is unconstitutional as to him, not as applied to others. *Parent v. State,* 621 S.W.2d 796, 797 (Tex.Crim.App.1981).

Appellant's point of error three is overruled.

The judgment of the trial court is affirmed.

LEVY, J., dissents.

LEVY, Justice, dissenting.

I respectfully dissent from the majority's disposition of appellant's first two points of error.

My problem in dissenting is that Tex. Rev.Civ.Stat.Ann. art. 6701d, § 107C (Vernon Supp.1987), the "seat-belt law," is, in part, both salutary and not *severely* oppressive—indeed, the appellant complains that the only constitutional right infringed upon is his right to be free from bodily restraint. In other contexts, of course, this freedom is of tremendous value and may even be said to constitute an *essential* ingredient in one's enjoyment of life. But I do question whether this specific regulation is "reasonable" in relation to its subject, or that, upon analysis, it is adopted in the interest of the community. This penal regulation is focused primarily *on the enforced protection by the individual of his own person,* and this is where it is oppressive. Only incidentally or collaterally is its beneficial effect intended to be imposed on the travelling public.

Here, there was no accident, no collision, no property damage, no injuries—merely the refusal by a driver to fasten his own seat belt. It is equally as offensive to me to criminalize smoking tobacco, or watching too much television, or the failure to brush one's teeth daily, or the consumption of alcohol in the privacy of one's home. In each case, the potential transgression, though its prohibition is aimed clearly at safeguarding the health or safety of the individual, has collateral consequences for the public, of varying degree.

Logically, the "rational basis" test, invoked by the majority, is applicable *only where the anti-social conduct of the individual impinges upon the rights of another.* Only thus could the test be compatible with the primary meaning of "liberty" in a democratic society: the opportunity to

swing one's arms as freely as one wishes—without hitting anyone else's nose. "Liberty" also necessarily implies one's acceptance of the risks involved in *being* free to make mistakes, to be foolish, to err, to blunder, without being punished by the social organization unless harm is thereby inflicted on others. Clearly, the State has an obligation to teach the better and more civilized path, but democracy requires, *where possible*, the substitution of self-restraint for external restraint. I am reminded of what Mr. Justice Brandeis wrote:

> Experience should teach us to be most on our guard to protect liberty when the Government's purposes are beneficient . . .

*Olmstead v. United States*, 277 U.S. 438, 479, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928).

In adhering to the principle that government can legitimately punish behavior only when it inflicts harm on another, but *not* when it is self-harmful or merely unwise, I echo the view expressed by both Louis D. Brandeis and John Stuart Mill. Brandeis evaluated "the right to be let alone" as "the right most valued by civilized men" in *Olmstead v. United States*, 277 U.S. at 478, 48 S.Ct. at 572. This statement is, perhaps, but a compendious version of John Stuart Mill's political discourse "On Liberty," in which he wrote, in 1859,

> The sole end for which mankind are warranted, individually or collectively, in interfering with the liberty of action of any of their number, is self-protection. . . . The only purpose for which power can be rightfully exercised over any member of a civilized community, against his will, is to prevent harm to others. . . . The only part of the conduct of anyone for which he is amenable to society, is that which concerns others. In the part which merely concerns himself, his independence is, of right, absolute. Over himself, over his own body and mind, the individual is sovereign.

Because I am afraid that if we uphold the authority of the State to punish one's failure to use a seat-belt, we are one more step on our way to an Orwellian society in which the State can punish merely for smoking cigarettes, for not brushing one's teeth, or for being foolish, I must dissent.