Raymond Duane **RICHARDS,**
Appellant;

v.

The **STATE** of Texas, Appellee.

No. 141–88.

Court of Criminal Appeals of Texas,
En Banc.

June 8, 1988.

Rehearing Denied Oct. 5, 1988.

Raymond D. Richards, Jr., Houston, pro se.

John B. Holmes, Jr., Dist. Atty., and Kathlyn Giannaula, and Joseph Owmby, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for State.

TEAGUE, Judge, dissenting.

I respectfully dissent to this Court refusing to grant the petition for discretionary review that has been filed by Raymond Duane Richards, an attorney of this State who represents himself pro se in this proceeding, henceforth appellant, in which appellant asserts that the Texas seat belt law, see Art. 6701d, § 107C, V.A.C.S., which proscribes one operating or riding in the front seat of a passenger car upon a road, street, or highway of this State unless he is then strapped inside of the vehicle by a safety belt, is unconstitutional.[1]

The record reflects that a Department of Public Safety Trooper testified in this

---

**1.** I believe that it is important to point out that the statute does not cover everyone who happens to be riding in a passenger type motor vehicle. For example, excluded are employees of the United States

cause, in the capacity as an "expert" to the validity of the seat belt law. The Trooper's testimony makes it clear to me that when members of the Department of Public Safety observe a motorist not being strapped in his vehicle by a seat belt, they do not intend to merely stop the driver, issue him a ticket, and send him on his merry way. Of course, if a "peace officer" sees a violation of the seat belt law occurring, under this Court's decisions, he will have probable cause to stop the motor vehicle, arrest the driver, and thereafter "strip search" the motor vehicle from bumper to bumper. See, for example, *Williams v. State*, 726 S.W.2d 99 (Tex.Cr.App.1986) (Held, a person who violates Art. 6701d, § 96(a), V.A. C.S., by parking his motor vehicle on the wrong side of the street, subjects himself and his vehicle to a full scale and complete warrantless search of both his person and his vehicle by the arresting officer.) A person who violates the seat belt law would, of course, be no better off than a person who was arrested for parking his motor vehicle on the wrong side of the street. My research has not yet revealed a case where a motorist who parked in front of an expired parking meter, thus violating a municipal ordinance, was arrested, and both his person and his motor vehicle were "strip searched". However, it appears to me that in light of such cases as *Williams*, supra, a majority of this Court would uphold such a warrantless arrest and search.

The record reflects that the Department of Public Safety Trooper who testified in this cause, who the court of appeals characterized as an "expert" on the seat belt law, was selected by the Department of Public Safety to be one of its "Educators." The record makes it clear to me however that the Trooper is qualified, not to testify on the validity of the seat belt law, or the legal merits or demerits thereof, but, instead, is merely qualified to speak to individuals and give them his personal preference viewpoint and the Department of Public Safety's viewpoint as to why one should be strapped inside of a motor vehicle when either driving the motor vehicle or riding in

Postal Service if they are then acting in the course of their employment and such requires them frequent entry into and exit from their vehicles. Persons who sit in the backseat of the motor vehicle also are not covered by the act.

The Act, in pertinent part, at the time appellant was first tried and convicted in a Municipal Court of Harris County, provided:

"(a) In this section, 'passenger car' includes a truck with a manufacturer's rated carrying capacity of not more than 1,500 pounds.

(b) A person commits an offense if the person:

(1) is at least 15 years old;

(2) is riding in the front seat of a passenger car while the car is being operated on a road, street, or highway of this state;

(3) is occupying a seat that is equipped with a safety belt; and

(4) is not secured by a safety belt.

(c) A person commits an offense if the person:

(1) operates on a road, street, or highway of this state a passenger car that is equipped with safety belts; and

(2) allows a child who is at least four years old but less than 15 years old to ride in the front seat of the car without requiring the child to be secured by a safety belt.

(d) A passenger car or a seat in a passenger car is deemed to be equipped with a safety belt if the passenger car is required under Section 139E of this Act to be equipped with safety belts.

(e) An offense under this section is punishable by a fine of not less than $25 nor more than $50.

(f) This section does not apply to a person who possesses a written statement from a licensed physician stating that for medical reasons the person is unable to wear a safety belt.

(g) It is a defense to prosecution under this section that the person presents to the court, not later than the 10th day after the day of the offense, a statement from a licensed physician stating that for medical reasons the person is unable to wear a safety belt.

(h) This section does not apply to persons employed by the United States Postal Service while performing duties for that federal agency which require the operator to service postal boxes from their vehicles or which require frequent entry into and exit from their vehicles.

(i) The department shall develop and implement an educational program to encourage the wearing of safety belts. The program shall emphasize:

(1) The effectiveness of safety belts and other restraint devices in reducing the risk of harm to passengers in motor vehicles; and

(2) The requirements of this section and the penalty for noncompliance.

(j) Use or nonuse of a safety belt is not admissible evidence in a civil trial."

same. Of course, given the fact that the Trooper testified that his employer has a personal preference for persons being strapped inside of a motor vehicle, one would hardly expect him to personally prefer that persons not be restrained in their motor vehicles by seat belts. Thus, his "expert" opinion views are certainly not those of an impartial, objective "expert".

However, when the Trooper testified, in support of his views, and those of his employer, he relied totally upon a book of statistics prepared by none other than his employer, the Department of Public Safety, which book of statistics, as far as I can determine, was not in the record of appeal when the case was before the court of appeals. It is also not in the record before this Court.

I find that almost any intelligent lay person who favors one being strapped inside of a motor vehicle is as qualified as the State's "expert" witness was to express an opinion on the validity or the merits of wearing such a device while operating or riding in the front seat of an automobile. Interestingly, given the testimony of the State's "expert" witness, versus the amount of research the record reflects the appellant himself has done on the subject, it appears to me that between the two appellant himself is clearly the more qualified "expert". Perhaps when appellant ceases to practice law, he can become a Department of Public Safety "Educational Expert" on the seat belt law, and give the opposing viewpoint of why the seat belt law was passed and why it might be hazardous to one's health to be strapped inside of a moving automobile.

Available printed material, on the subject of being strapped inside of a moving motor vehicle, that is in the record, reflects or indicates that this subject has been extremely controversial for more than 15 years.

It appears to me, from available information, that what caused the original enactment of seat belt legislation was the desire of automobile manufacturers not to be required by Congress, under the National Traffic and Motor Vehicle Safety Act of 1966, or the Legislatures of the States, to install a superior safety device, "air bags", in its motor vehicles, but instead to see that the much cheaper "optional" seat belt legislation passed. Automobile manufacturers were given a choice: Install either seat belts or air bags in their automobiles. Available information informs us that automobile manufacturers of this Nation spent approximately $14,000,000.00 on lobbyists to see that the requirement that air bags be installed in motor vehicles not be enacted into legislation. By taking this route, rather than lobbying the Legislatures of this Nation, including Texas, to require the installation of "air bags" in all newly manufactured motor vehicles, the automobile manufacturers of this Nation unquestionably saved themselves millions, if not billions, of dollars. Thus, in light of this information, we deceive ourselves if we believe that "seat belt" laws were enacted to protect drivers and passengers of motor vehicles by the best means available. Simply put, "seat belt" legislation was enacted not to save lives or prevent injury but instead was enacted only to save automobile manufacturers money by letting them install seat belts rather than air bags in newly manufactured automobiles.

In filing this dissenting opinion, I acknowledge that there are probably few persons in this State, except perhaps such persons as Justice Levy, myself, and the automobile manufacturers, who concern themselves with the subject of the constitutionality of the Texas seat belt law, see Art. 6701d, § 107C, V.A.C.S., which might appear to be an innocuous piece of legislation. However, given what has happened in the past to many citizens of countries as a result of innocuous-appearing legislation being enacted, such as we have here, which innocuous appearing legislation many of the citizens of those countries were soon made to realize, through their enforcement, was not only terribly offensive but often deathly, any right thinking citizen of this State should be concerned over the constitutionality of our seat belt law, because the Texas seat belt law is one of those innocuous-appearing laws. As previously pointed out, it is a law that can easily be used by

law enforcement persons to cause much misery to many drivers and passengers of motor vehicles of this State. Today, this Court is given the opportunity to consider and determine the constitutionality of the Texas "seat belt" law. Instead, it declines to grant appellant's petition for discretionary review, thus giving its implicit approval to the holding by the court of appeals that the statute is in all things constitutional.

Perhaps, however, appellant's efforts will not be in vain. Maybe someday in the future a leading spokesperson of this State will look back and admire the war that Raymond Duane Richards, Jr., waged to have the Texas seat belt law declared unconstitutional, and recommend to the Legislature of this State that a monument be erected on the Capitol grounds, to be dedicated to the memory of this true advocate of the civil right to be let alone and the constitutional right of privacy.

The right to be let alone, of course, is probably the most comprehensive of all of our constitutional rights. It is certainly one of the most valued rights that most civilized men and women cherish. See *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed.2d 944 (1928) (Brandeis, J., dissenting opinion). Unfortunately, this Court today puts this right on the back burner.

Justice Levy of the Houston First Court of Appeals, in the dissenting opinion that he filed on New Year's Eve of 1987 in this cause, when it was pending in that court, see *Richards v. State,* 743 S.W.2d 747, 750 (Tex.App.–1st 1987), eloquently expressed therein, in his own inimitable style, his concerns about the Texas "seat belt" law in the following way: "I am afraid that if we uphold the authority of the State to punish one's failure to use a seat-belt, we are one more step on our way to an Orwellian society in which the State can punish merely for smoking cigarettes, for not brushing one's teeth, *or for [just] being foolish."* (My emphasis.).

Justice Levy's Brethren on the First Court of Appeals ignored his concerns. A majority of the court of appeals merely held, inter alia: "In the present case, there is evidence that the Texas seat belt law serves the public safety and welfare by enhancing a driver's ability to maintain control of his vehicle, and by reducing injuries not only to himself, but also to others, all of which directly affects the state's economic welfare." As authority for such holding, the court of appeals relied totally upon the Trooper's testimony, which testimony was based solely on a book of statistics that his employer, the Department of Public Safety, prepared. Interestingly, as far as I can determine, the Trooper's book of statistics, though admitted into evidence, was never placed in the record of appeal, and is not in the record that is before this Court. The record clearly demonstrates that at no time did the Trooper correlate his "book of statistics" to any scientific data that the Texas seat belt law "serves the public safety and welfare"; in fact, the Trooper admitted as much when he testified.[2]

The court of appeals stated the following in its opinion: "The State offered evidence by an expert witness to show that *the purpose of the Act* was to reduce injuries and/death in traffic accidents. (My emphasis.) The expert testified that this was a reasonable means of fulfilling the Act's purposal, and stated that there was 'a significant drop in fatalities especially after the seat belt laws went into effect.'" On what basis was this non-legislator qualified to express such a legislative opinion? On what basis was this individual, who carries around with him a book of statistics prepared and published by his employer, an expert? A clear reading of the Trooper's testimony makes it obvious to me that his testimony has no more value than if one stopped an individual on the street, who had the same book of statistics, and asked him what he thought about the subject, and that individual gave his curb stone opinion

---

2. When it comes to using statistics to support some hypothesis, such as being strapped inside of a moving automobile is good for your health

and welfare, Benjamin Disraeli perhaps expressed it best: "There are three kinds of lies: lies, damned lies, and statistics."

on the subject. "Clearly, there is nothing to be gained by permitting a witness to proffer an opinion on a subject when any other person in the courtroom, any member of the jury, could form an opinion on the issue equally readily and with the same degree of logic as the witness." (Footnote deleted.) *Holloway v. State*, 613 S.W.2d 497, 500 (Tex.Cr.App.1981). Also see Rule 702, *Rules of Criminal Evidence*.

Justice Levy, in his dissenting opinion, also quoted from one of John Stuart Mill's works. I shall also quote from Mill, but will quote from his work entitled *Principles of Political Economy* (1848), Vol. II, at pages 560 and 561, where he made the following poignant remarks:

> There is a circle around every individual human being, which no government, be it that of one, or a few, or of the many, ought to be permitted to overstep; there is a part of the life of every person who has come to years of discretion, within which the individuality of that person ought to reign uncontrolled either by any other individual or by the public collectively. That there is, or ought to be, some space in human existence thus entrenched around and sacred from authoritative intrusion, no one who professes the smallest regard to human freedom or dignity will call in question.

Justice Harlan, in writing *Jacobson v. Massachusetts*, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905), for the Supreme Court of the United States, which was the state vaccination case, observed the following axiomatic fact:

> If there is any such power in the judiciary to review legislative action in respect of a matter affecting the general welfare, it can only be when that which the legislature has done comes within the rule that, if a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and

thereby give effect to the constitution. (Citations omitted). (363).

Given the lack of any evidence that might reflect that the seat belt law has a real substantial relation to the general public health and general public safety, the police power rationale is certainly not applicable to this case according to settled principles that the police power of a state must be held to embrace such reasonable regulations established directly by legislative enactment as will protect the *general* public health and the *general* public safety, and not just the health and safety of a few individuals. See *Gibbons v. Ogden*, 22 U.S. [9 Wheat] 1, 203, 6 L.Ed. 23, 71.

In this instance, appellant asserts that his liberty has been unlawfully restrained and his right of privacy has been unlawfully invaded because the State mandates that failure of a driver of or a passenger in a motor vehicle to wear a seat belt while inside the vehicle subjects such person to a criminal penalty; that such law is unreasonable, arbitrary, and oppressive, and, therefore, hostile to the inherent right of every freeman to care for his own body and health in such way as to him seems best. See and compare what the Supreme Court stated and held in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), concerning the then Texas abortion statute.

I acknowledge that citizens of this State do not have the absolute right to be, at all times and in all circumstances, wholly freed from restraint. However, before such restraint as here must be allowed to become effective it must first be established that such restraint is related to the general health and safety of the citizens of this State, and not to just a few persons. I acknowledge that "Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one's will. It is only freedom from restraint under conditions essential to the equal enjoyment of the same right by others. It is, then, liberty regulated by law." *Jacobson v. Massachusetts*, supra, 25 S.Ct. at 361. However, "if a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is,

beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution." *Jacobson v. Massachusetts,* Id., at 363.

Justice Levy also pointed out the following in his dissenting opinion: "I do not question whether this specific regulation is 'reasonable' in relation to its subject, or that, upon analysis, it is adopted in the interest of the community. This penal regulation is focused primarily on the enforced protection by the individual of his own person, and this is where it is oppressive. Only incidentally or collaterally is its beneficial effect intended to be imposed on the travelling public." Also see "The True Meaning of the term 'liberty' in those clauses in the Federal and State constitutions which protect, 'life, liberty, and property," 4 *Harvard Law Review* (1890), which, although written almost 100 years ago, should be required reading of every student of constitutional law.

The seat belt law, and any other similar type legislation, is clearly antithetical to the legitimate aims of a free society in general and of American society in particular. I believe that our society has incrementally and steadily lost sight of what was once the most basic axiom of American political theory, that government is vested only with powers as the people have expressly relinquished to it in their social compact. Although it might be permissible for the Legislature to enact legislation that protects the citizenry in general, and as a whole, from undesirable consequences occasioned by the conduct of individuals or groups, I am not yet prepared to accept the idea that the public good includes protecting individuals from themselves. To approve such a concept would, I believe, permit the government to legitimately decide not only what is good for society but also what is good for individuals, irrespective of any social interests. This, to me, is the antithesis of freedom.

It is the nature of our government and society that certain choices that must be made by individuals are personal and of no legitimate interest to the State. At a minimum, we must insist that our lawmakers not deliberately enact statutes regulating or penalizing the conduct of individuals unless evidence is first presented that might support the finding that such laws are reasonably necessary to the furtherance of the public, and not simply individual interests. By implicitly approving the holding by the court of appeals that the seat belt law is constitutional, has this Court not taken one giant step upon "the slippery slope of paternalism, treading blithely on individual liberty?" Van Lanningham, "The Making of the 1986 Florida Safety Belt Law: Issues and Insight," 14 *Florida State University Law Review* (1986), at 716.

Justice Levy mentioned in his dissenting opinion that approval of the seat belt law causes us to be "one step on our way to an Orwellian society in which the State can punish merely for smoking cigarettes, for not brushing one's teeth, or for being foolish." Will our Legislature next make it a penal offense to engage in rock climbing, hang gliding, public automobile racing, or scuba diving, each of which can surely be dangerous to one's health? Will our Legislature next pass a law that makes it penal not to wear a harness attached to the ceiling of the room while one takes a shower in the privacy of his own residence?

Given what the Court does today, and what the court of appeals has already done, I say to George Orwell who wrote "1984", which provides a chilling view of a totalitarian society in which individualism and privacy are systematically eliminated: "Orwell, be patient. The Executive, Legislative, and Judicial Branches of our government are working just as fast and hard as they can to make our society like the one depicted in your book. Just give us a little more time."

For the above reasons, I respectfully dissent to this Court's approval of the Legislature's action in depriving us of the individual right to perhaps do foolish things and make foolish choices.