OPINION OF THE COURT
Martin Schoenfeld, J.
"Laugh, and the world laughs with you;
"Weep, and you weep alone.” (Ella Wheeler Wilcox, Solitude.)
The issue presented is whether a comedy club may be deemed a cabaret for the purpose of requiring compliance with the New York City Building Code’s fire regulations. In the instant case the court finds that it can.
THE FACTS
Defendant Caroline’s For Comedy, Inc., which owned a well- *1062 known comedy club called Caroline’s, is charged with violating Administrative Code of the City of New York § C19-156.2, since recodified as § 27-4260, for failing to have an interior fire alarm system in the subject premises. This particular club, located at 332 Eighth Avenue in Manhattan, apparently no longer exists.
At trial Inspector Richard Butmankiewicz, a fire department lieutenant assigned to the Public Assembly Unit, testified that in 1987 he visited Caroline’s comedy club, which he characterized as being a cabaret. He described the interior as being L-shaped. There was a bar in the front. The rear contained a stage and small tables, with a. seating capacity for about 150 people. The inspector observed two acts perform that night. The first consisted of a solo comic, while the second act involved three comedians performing together. By using a counting device the lieutenant determined that 140 people were present at the performance. Also introduced into evidence was the certificate of occupancy which permitted the premises to be used for restaurant purposes.
Lt. Butmankiewicz inspected the premises and found that although it contained an emergency lighting system and fire extinguishers, it failed to have an interior fire alarm system. For this reason a summons was issued to the club’s manager. Subsequently, the corporate owner was substituted as defendant.
THE CONTENTIONS
In moving for an order of dismissal, defendant contends that the People have not proven the existence of a cabaret on the premises. According to the Building Code a cabaret is defined as a place where "any musical entertainment, singing, dancing or other similar amusement is permitted in connection with an eating and drinking establishment.” (Administrative Code § 27-232.) Defendant claims that the term "similar amusement” is overbroad and must not be construed to include comedy which is a form of protected free speech. Further defendant contends that the entertainment provided was merely incidental and the club should therefore be considered exempt from the cabaret laws. Defendant supports these positions by referring, inter alia, to Schad v Mount Ephraim (452 US 61 [1981]), Club Winks v City of New York (99 Misc 2d 787 [NY County 1979]), and Chiasson v New York City Dept. of Consumer Affairs (138 Misc 2d 394 [NY County 1988]). The *1063 former case, involving a zoning ordinance, and the latter two, concerning a licensing regulation, hold that a statute which implicates First Amendment rights of expression must be narrowly drawn.
THE LAW
Section 27-4260 of the Administrative Code, which defendant is accused of violating, states as follows: "When required by the building code, all new and existing places of assembly as defined in article two of subchapter two of the building code shall be provided with sprinkler and fire alarm protection and emergency lighting.” A place of assembly is defined as an enclosed room in which 75 or more persons gather for such activities as religious, recreational, educational, political or social purposes, or for the consumption of food or drink. (Administrative Code § 27-232.) A cabaret is included in the Building Code’s definition of a place of assembly which requires a fire alarm system. (Administrative Code § 27-968 [a] [10] [b].)
The People have adequately shown that the comedy club, in which more than 75 patrons watched a performance, was a place of assembly. Further, defendant’s assertion that comedy cannot fit within the definition of a cabaret because it is not amusement similar to singing or dancing is clearly specious. Even the dictionary states that a comedian is an entertainer who amuses others by telling jokes, singing comic songs, etc. (See, Webster’s New World Dictionary 283 [2d coll ed 1982].) As noted in Grayned v City of Rockford (408 US 104, 110 [1972]): "Condemned to the use of words, we can never expect mathematical certainty from our language.” Thus, the quest for definiteness does not preclude the drafters of legislation from the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding. (People v Byron, 17 NY2d 64, 67 [1966].)
Nor has defendant sufficiently demonstrated in any other respect that the ordinance at bar is somehow overbroad or violative of First Amendment rights. There is a strong presumption that a statute duly enacted by a legislative body is constitutional (People v Pagnotta, 25 NY2d 333, 337 [1969]). Also, individual rights may be weighed against those of society where health, safety and welfare are concerned. (See, Wells v State of New York, 130 Misc 2d 113 [Steuben County 1985], affd 134 AD2d 874 [4th Dept 1987].) Thus, as Justice Oliver *1064 Wendell Holmes eloquently stated in Schenck v United States (249 US 47, 52 [1919]): "The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic.” In fact, the very regulation which defendant herein is accused of violating was enacted as part of Local Law 41, commonly referred to as the Blue Angel Law, in direct response to a disastrous fire. The fire occurred at the Blue Angel Cafe, a small night club, where seven persons tragically perished. (See, Off of Mayor, Minutes of Public Hearing, In the Matter of Local Law 41, Dec. 13, 1978.)
Defendant’s next contention that the club’s comedy acts should be deemed as incidental entertainment which is excluded from the definition of a cabaret is likewise without merit. In this regard defendant refers to Administrative Code § 20-359 which as modified by Chiasson v New York City Dept. of Consumer Affairs (138 Misc 2d 394, supra) exempts from the licensing of cabarets those places that provide incidental musical entertainment without dancing. However, this exemption language only appears in that part of the Administrative Code which deals with the issuance of licenses by the Department of Consumer Affairs. The matter at hand concerns a fire department ordinance containing its own definition of a cabaret in a different section of the Administrative Code, referred to as the Building Code. Based upon Lt. Butmankiewicz’s uncontroverted testimony at trial, including his observations as to physical layout, size of audience, and seating arrangement, it is clear that the entertainment presented at defendant’s comedy club was in any event more than just incidental. (See, Matter of Charlotte’s Fancy Rest. v City of New York, Dept. of Consumer Affairs, 69 NY2d 865 [1987].)
Finally, it should be noted that interior fire alarm systems are required by the Building Code not only for cabarets but for all places of assembly providing entertainment which are found to be what are termed as F-3 or F-4 occupancies. (Administrative Code § 27-549 [b].) Defendant’s establishment fits within the F-4 occupancy group which is defined to include "buildings and spaces in which persons assemble for dancing or for the consumption of food or drink, or for any combination of dancing, eating, drinking or entertainment.” (Administrative Code § 27-258.) The evidence thus shows that even if Fire Inspector Butmankiewicz had not characterized Caroline’s comedy club as a cabaret, defendant was nevertheless in violation of Administrative Code § 27-4260.
*1065 CONCLUSION
The statute as applied against Caroline’s comedy club is neither vague nor overbroad, and serves a legitimate societal interest. The People have proven beyond a reasonable doubt that defendant Caroline’s For Comedy, Inc. violated Administrative Code former § C19-156.2 by failing to have an interior fire alarm system on its premises. Sentencing shall take place within six weeks from the date of this decision.