Dale Robert GREENLEE, Appellant,

v.

The STATE of Texas, Appellee.

No. 635–89.

Court of Criminal Appeals of Texas,
En Banc.

July 19, 1989.

Richard E. Stokes, III, Amarillo, for appellant.

Danny E. Hill, Dist. Atty., Randall C. Sims, Asst. Dist. Atty., Amarillo, Robert Huttash, State's Atty., Austin, for the State.

DISSENTING OPINION TO COURT'S REFUSAL TO GRANT APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

The record reflects that through the use of Texas "seat belt" law, see Art. 6701d, § 107C, V.A.C.S., a civil statute which carries criminal penalties, Dale Robert Greenlee, henceforth appellant, who was then a resident or citizen of the State of Arizona, while driving a motor vehicle, a van, that had Arizona license plates on it, who appears to have then been enroute to South Carolina, for all practical purposes, became a felon in less than ten minutes because he did not have the good sense not to drive on Texas Interstate Highway 40. The sole reason that was given why Department of Public Safety Troopers stopped appellant was because he was not seen forcibly restrained inside of his vehicle by a shoulder strap type seat belt. However, the record shows that it was not necessary at that time for appellant to be forcibly restrained inside of his vehicle by a shoulder strap type seat belt, because being forcibly restrained inside of his vehicle by a lap strap type seat belt compiled with the then law, but, of course, such is not visible to a peace officer's everwatchful, distantly located eyes.

Department of Public Safety Trooper Michael Moser testified that he and Wayne Clark Williams, his partner during 1987, see *post*, stopped approximately 500 motorists that year for not wearing their seat belts. This constitutes ⅙ of the 3,000 motorists that they stopped that year. Given the number of patrolling Troopers we had in this State that year, the number of motorists stopped in Texas for not wearing their seat belts must have been in the multiple thousands.

The Amarillo Court of Appeals, in an unpublished opinion, affirmed the trial court's judgement. See *Greenlee v. State*, No. 07–88–0111–CR, March 20, 1989. Because the issues in this cause can perhaps have far reaching implications beyond the jurisdiction of the Amarillo Court of Appeals, the petition filed on behalf of appellant should be granted by this Court so that this Court can consider and discuss these issues. I respectfully dissent to such contrary decision of this Court.

In this cause, we once again meet on the record Wayne Clark Williams, a Department of Public Safety Trooper, who compiled the "Texas Interstate Highway 40 Drug Courier Profile." See *Valcarcel v. State*, 765 S.W.2d 412 (Tex.Cr.App.1989). Williams, however, in this cause has himself a new protege, Department of Public Safety Trooper Michael Moser, who, because of his testimony, "I was given a class—a tape was made available of a class that was presented by the New Mexico State Police ...", I assume has been exposed to the information compiled by Williams and the New Mexico State Police concerning their "New Mexico Interstate Highway 40 Drug Courier Profile" and Williams "Texas Interstate Highway 40 Drug Courier Profile." See footnote 2 in

*Valcarcel v. State.* Amazingly, after the Department of Public Safety has spent thousands and thousands of dollars developing the "Texas Interstate Highway 40 Drug Courier Profile", Moser testified: "I will tell you under oath that I do not profile, because profiles do not work on I-40. Profiles have worked previous, but they don't work anymore on I-40." Moser did not amplify, nor was he asked to do so, why the "Texas Interstate Highway 40 Drug Courier Profile" does not work anymore on that highway. Nor was Williams asked, nor he testify, for probable cause purposes, about his vast experience in compiling this drug courier profile.

The record reflects that appellant, who appears to have been dressed and wore his beard and hair much like the "Hippies" of the 1960's did, while driving a van much like the "Hippies" drove in the 1960's, but without all of those wonderful looking psychedelic colors that those vans had, which vehicles became, for law enforcement officials, "attractive nuisances," pulled off Texas Interstate 40 Highway in Amarillo to get gas and permit his wife to go and use the ladies restroom. Soon thereafter appellant was arrested because neither Moser nor Williams had been able to see appellant wearing a shoulder type seat belt. However, as things turned out, no violation of the law was then being committed within Moser's or Williams' eyesights, because it was not necessary at that time for one who drove this type motor vehicle to be strapped into his motor vehicle much like one might strap a monkey inside his motor vehicle through the use of a shoulder type seat belt.

Notwithstanding that Moser testified that all that he was going to do was give appellant a warning ticket for not wearing a seat belt, Moser then commenced an investigation in order to see if appellant could pass what I will call the "zero tolerance drug" test, rather than to just give appellant a warning ticket for not wearing a shoulder seat belt, as Moser testified he intended to do, wish appellant and his wife

a good day, and send them on their way with a big Texas Department of Public Safety Trooper smile. It is obvious to me from this record that Moser commenced attempting to determine if appellant matched the "Texas Interstate Highway 40 Drug Courier Profile" that Williams had previously compiled. Things immediately went downhill for appellant after this.

Appellant's vehicle was thereafter searched, pursuant to an oral consent to search, notwithstanding that the Troopers had what appears to have been a fist full of written consent to search forms with them at the time. As to whether appellant did or did not give the Troopers his oral consent, such became a mere swearing match in the trial court between the Troopers and appellant and his wife, and we all know who wins about 99.9% of those swearing matches in most of our trial courts, don't we?

It is obvious to me that both Williams and Moser have read this Court's opinion of *Valcarcel.* See supra. It is also obvious to me that they read what I wrote in the dissenting opinion that I filed in *Richards v. State,* 757 S.W.2d 723 (Tex.Cr.App.1988). There, I stated the following: "[I]f a 'peace officer' sees a violation [or what might be a violation] of the seat belt law occurring, under this Court's decisions, he will have probable cause to stop the motor vehicle, arrest the driver, and thereafter 'strip search' the motor vehicle from bumper to bumper. See, for example, *Williams v. State,* 726 S.W.2d 99 (Tex.Cr.App.1986)."

Given the impact that we are told that the seat belt law has had on traveling motorists of this State, both residents, citizens, and out of state motorists, this case gives this Court a good opportunity to express the view that if a motorist is stopped by a peace officer for violating some traffic law of this State, and the officer has no intention of taking the motorist to the bastille for that violation, the officer should, after ascertaining that the motorist has a valid driver's license, the necessary insurance papers, the necessary title papers to

the vehicle, and no outstanding warrants of arrest, write the motorist a ticket or a warning ticket for that offense, have the motorist sign the ticket, and, after giving the motorist a great big Texas smile, wish him a good day and send him on his way. It is not, or should not be the function of such officer to do more because we do not live in a police state, and for such an officer to do more, without more occurring in his presence, is to approve what we expect from police officers who operate within a police state.

Therefore, I respectfully dissent to this Court not granting appellant's petition for discretionary review.